Springle's Heirs & Adm'rs v. Shields & Paulling.

~~~~~~~~~~

# SPRINGLE'S HEIRS AND ADM'RS *vs.* SHIELDS AND PAULLING.

17 295
98 147

1. W. S. sold 160 acres of land to J. S and agreed to deliver possession and execute title on a certain day upon the payment of the purchase money, but before the day arrived W. S. died, whereupon his widow continued to occupy and cultivate 47 acres of the premises for several years and until her dower was assigned her. On a bill filed by J. S. and P. his intermediate assignee, against the heirs and administrators of W. S., to enjoin the collection of the purchase money, for a specific execution of the contract, so far as it could be performed, for an account of rents, and for an abatement of the price contracted to be paid because of the dower incumbrance—*Held*—

   1. That J. S. cannot be allowed a gross sum as the supposed present value of the dower interest, but should be relieved from the payment of one-third the value of the land at the time of the contract until the death of the dowress, on his securing its ultimate payment, without interest, by a lien on the land.

   2. That if the widow occupied and cultivated only that portion of the land which was afterwards assigned her as dower, no compensation should be allowed the vendee for rent, since the interest on the value of such portion would be a set off against the dower.

2. Where enquiries as to compensation or damages do not involve much complexity of facts or amounts, an issue of *quantum damnificatus* is not necessary, but the usual course is to refer the matter to the register and master.

3. Where the defendant in a bill which prays for a specific performance, or compensation, if it cannot be done, is called upon to produce his title and fails to do so, it is not error to grant the alternate relief.

Error to the Chancery Court of Marengo.    Tried before the Hon. Anderson Crenshaw.

THE defendants filed a bill against the plaintiffs in error, as the heirs and personal representatives of William Springle, deceased, in which they state, that in January 1834, said Springle executed a bond for title to John Shields for certain lands which he sold him at the price of $1500, and for which Shields gave him his two notes for the respective sums of $1200 and $300, payable on the 1st November thereafter, at which time it was agreed possession of the land was to be delivered; that Springle died before the maturity of the notes, and that his administrator and administratrix have since sued on them and recovered judgments against Shields; that in 1834 Shields sold the land to Paulling and transfered to him Springle's bond; that before the death of Springle, one Marene D. Moore was in possession of 25 acres of the land, which he and his assigns have held under adverse claim of title ever since; and that from the death of Springle up to the 24th March 1842, his widow retained possession of forty-seven acres of the land, which on that day was assigned her by the Orphans' Court of Marengo for her dower in the premises.    The bill avers a readiness on the part of the defendants in error to pay the purchase money if a good title can be made them to the whole of the land, which they insist cannot, and prays a specific execution of the contract so far as it can be done, and suitable relief so far as it cannot be specifically executed.    The chancellor rendered a decree in accordance with the prayer of the bill, the material portions of which are sufficiently noticed in the opinion of the court.

LYON & MANNING, for the plaintiffs in error.

HENLEY, for the defendants.

CHILTON, J.—The decree of the chancellor cannot be sustained, and we will briefly proceed to point out the errors

which have intervened, first laying down the general principles of law applicable to the case. The established doctrine is, that in equity the purchaser of the land who holds the bond of the vendor for title must be considered the owner of the land, and may dispose of it as though he owned the fee, the disposition of course being nugatory in the event the court should refuse a specific execution of the contract.—Sug. on Vend. 561. So equity regards that as done which is agreed to be done—considers the vendor the owner of the purchase money, and the vendee the owner of the land; consequently if the vendee retain the purchase money after it is due, he must pay interest to the vendor, and if the latter retain the land after the period when by the terms of the contract the possession should vest in the purchaser, he must pay the reasonable rent.—Sug. on Vend. 290. So, also, if the vendor have no title to a portion of the land sold, as a general rule the purchaser may have a specific performance of the contract, so far as it can be performed, and is entitled to compensation for that portion which he cannot get.—1 Ves. & Beam. 358; Wheatly v. Slade, 4 Sim. 126; Sug: on Vend. 301. And if the purchase money has not been paid, equity will relieve the purchaser from the payment of such part as shall be equivalent to the portion of the land for which no title can be made.—Story's Eq. Jurisp. § 779, note 1; Graham v. Oliver, 3 Beav. 124-'28; King v. Wilson, 6 ib. 124. But in such cases, it is said that if the purchaser should insist upon such a performance, the court will grant the relief only upon his compliance with equitable terms.—2 Story's Eq. Jurisp. 106, § 779—citing Patton v. Rodgers, 1 Ves. & Beam. 351; Thomas v. Dering, 1 Keene's Rep. 729-'43-'47. It results from these elementary principles, that had Springle, the vendor, lived and retained possession of the land sold after the time when by the terms of the contract the possession should have been delivered by him to Shields or Paulling as the assignee of the bond, he would have been liable for the rents to the vendee and entitled to interest upon the purchase money. But Springle died before the 1st November 1834, at which time it seems to be conceded title was due to the vendee upon the payment of the purchase money, and the wife of the vendor was appointed one of his personal representatives. She retained possession of the land until the 24th March 1842, at which time her dower was

20.

assigned to her. The chancellor decreed that the annual rents up to the time of the assignment of the dower, with the interest thereon, as also the value of the dower at the time it was assigned, be deducted out of the purchase money as of that time.

There can be, we think, no question but that the dower of the vendor's wife being allotted out of the estate, a good title to which he had covenanted to convey, is such an incumbrance as entitles the vendee to relief. In Parks v. Brooks, 16 Ala. 529, we held that even an inchoate right of dower is such an incumbrance on land as will authorise a purchaser who has contracted for a good and lawful title to refuse to perform the contract. But the purchaser here does not desire to rescind the contract. He seeks an abatement of the price he agreed to pay, and the inquiry is, how shall he be relieved and to what extent? In Beavers et al. v. Smith, 11 Ala. 20, it was held by our predecessors that where compensation to the widow is made in money instead of an allotment of dower in the land, a sum in gross being the supposed present value of the life estate could not be decreed; but that the true rule was to ascertain the value of the premises at the time of alienation and to decree the payment to her annually of the interest on one-third of such value for life, providing for the security of such payment by a lien on the land. In that case the commissioner in ascertaining the value of the widow's dower fixed upon a period of seven years for her life, and made the interest for that time upon one-third the value at the time of alienation, the sum to be paid her in lieu of specific dower. The court said "The dowress may live to a patriarchal age, she may die the next day, and the assumption that she will live seven years is alike unjust to her and the alience." The court morever say they have been unable to find any rule by which the present value in gross of a dower interest may be ascertained.—See, also, Johnson v. Elliott, 12 Ala. 112; Potier & McCoy v. Barclay & Husband, 15 Ala. 439; Fry v. Merch. Ins. Co. ib. 810. Now the rule which would make it unjust to the parties to allow a sum in gross to be paid to the widow in lieu of dower in the land, would equally seem to forbid that a sum in gross estimated as the supposed value of the dower should be allowed the alienee as against the estate of the vendor. In the case before us the rent of the premises and interest thereon

for a little more than seven years amounts to nine hundred and thirty-two dollars, whereas the estimate of the dower interest in gross is $475. These sums added ($1407) are deducted from the purchase money and allowed to extinguish *pro tanto* the vendee's liability to the estate. So that if the widow had died the day after the decree was rendered, the alienee would have made as clear profit by the operation at least the estimated amount of her dower. On the other hand, if the dowress be a young woman and should live out her three score and ten, the alienee might be greatly the sufferer. The uncertainty of such a rule and the impracticability of attaining by its application the justice of the case incline us to eschew it whenever it can be done. We are aware that cases may arise and have arisen where juries are compelled to go into such estimates to ascertain the damage the vendee has sustained by reason of such incumbrances, but the case at bar is one where the court being called upon to exercise its extraordinary jurisdiction, has the power to require the parties to do justice and to adopt a rule, which while it may not meet the entire justice of the case, at least approximates more nearly to it than any other we can adopt. That rule is indicated by the cases of Beavers v. Smith, Johnson v. Elliott and the other cases above refered to, and we think may with as much propriety be applied to the alienee when the value of the dower is to be ascertained so as to abate the purchase money, as to the widow in cases where such dower is assigned. According to this rule the value of the premises at the time of the alienation by Springle to Shields should have been ascertained, and the court should have decreed that the vendee should be relieved from the payment of so much of the purchase money as should be equal to one-third of that value until the termination of the life estate of the widow, immediately upon the termination of which the sum thus decreed to remain unpaid should be paid without interest to the representative of the deceased vendor, securing its ultimate payment at the time designated by a lien on the land.

In respect to the rents of the land, if the widow has only had in possession and cultivation the portion which has since been allotted her as dower, no compensation should be allowed for rent, since the interest on one-third the value of the land from the time of alienation would be set off against her dower, to

which she became entitled upon the death of her husband. If on the other hand the land occupied by her exceeded in value one-third the value of the entire tract, and the same or some portion of it has not been included in the allotment to her, then the vendee should be allowed an abatement for rent in the proportion that the excess bears to the value of the third and annual interest on that sum. To illustrate the idea more fully—if the entire tract was worth $1200, then $400 would be the value of one-third, to which third the widow must be considered as entitled from the death of her husband as though it had been assigned, for that is the period when the right was perfect. But if the land so occupied by her was worth $500, then the vendee should share one-fifth the reasonable rent of the whole thus occupied and annual interest thereupon. Nevertheless, if the portion actually assigned her as dower embraces the *whole* of the land occupied by her, then as a court of competent jurisdiction has already determined that she was entitled to it, all question as to its relative value and the rents are foreclosed by that decision, unless the allotment of dower which has been decreed her be impeached for fraud, which this bill does not attempt to do. The widow's right to dower is consummate upon the husband's death, and her right of action then commences to obtain the fruits of that title.—Park on Dower, 247. She is not entitled to recover damages as mesne profits against the alienee of the husband but from the time of commencing her suit for dower. Beavers & Jemison v. Smith, 11 Ala. 20 ; but having possession she is entitled under the statute to hold the same free of rent until her dower is assigned.—Clay's Dig. 173, § 7. The compensation, however, which according to the views above expressed is allowed the alienee, is not made by the widow, but by the estate of the vendor being deducted from the judgments for the purchase money, which are assets of the estate.

We think the inquiry to ascertain the amount to be abated, as also the value of the dower as above designated, may well be submitted to the register of the Chancery Court, and that no issue of *quantum damnificatus* is required by the correct rules of practice to be awarded. In cases where inquiries as to compensation or damages do not involve much complexity of facts or amounts, it is the usual course to refer the matter to the register and master.—Story's Eq. Jurisp. § 795, and authorities cited in

note 1, p. 131, (4th edit.); see, also, Anthony v. Oldacre, 4 Call, 489.

As to the twenty-five acres avered in the bill to be held adversely by Marcus D. Moore, and to which the vendor, Springle, had no title, we think there is no error.   It was the duty of the defendants to have exhibited their title papers before the master, or with their answers, if such title papers existed.   They failed to do this, and it being proved that this portion of the tract sold was held and claimed adversely to Springle up to the time of the reference and from a period anterior to the purchase, we think the master very correctly reported that the vendor had no title to such part.—Reading v. Ford's Heirs, 1 Bibb's Rep. 338.   The price of that part, as agreed on between the parties, was properly deducted from the amount of the purchase money.

For the error we have noticed, the decree must be reversed and the cause remanded.