### ELLA WALKER v. FREDERICK S. KELLY ET AL.

*Specific performance—Dower rights—Homestead—Decree.*

1. Where a complainant is entitled to the specific performance of a contract for the sale and conveyance of land subject to the dower rights of the wife of the vendor, who was not a party to the contract, the decree may also provide for compensation to the complainant for the present value of such contingent right of dower.

2. Upon the evidence in this case, complainant is held entitled to a deed of 120 acres of land from her father, subject to a reservation to him of one-third of certain crops during his natural life, and also to compensation for the present value of the contingent right of his wife to dower in said land.

Appeal from Gratiot. (Daboll, J.) Argued February 11 and 12, 1892. Decided April 8, 1892.

Bill for the specific performance of a verbal contract

for the sale and conveyance of land. Complainant appeals. Decree reversed, and one entered granting relief prayed. The facts are stated in the opinion.

*George P. Stone,* for complainant.

*Newell Leonard* and *E. H. Ashley,* for defendants.

McGRATH, J. This is a bill for specific performance of a contract for the conveyance of 120 acres of land.

Complainant, who is the daughter of defendant Kelly, owned 80 acres of other land, and defendant Walker, the husband of the complainant, owned 40 acres adjoining. Complainant and her husband, in September, 1881, sold their land, receiving therefor $1,000 in cash and a mortgage of $1,300. They were to give possession in April, 1882. Defendant Kelly owned a farm of 200 acres, upon which he, with his wife and son, resided. Kelly's wife was complainant's stepmother. The proceeds of the land sold by complainant and her husband were turned over to defendant Kelly, with which he purchased a small farm near the village of Ithaca, to which Kelly and wife removed from the farm in dispute. After the lapse of two years and a half, complainant and her husband moved upon the land in question, where they have since resided. Since she moved upon the farm complainant has turned over one-third of the crops to her father. These facts are not disputed.

Complainant claims that, after she had sold her farm, her father represented to her that he was getting too old to work his farm, and desired to buy a small place near the village, and divide up the 200-acre farm between complainant and her brother; that he had been looking at the Kinkerter place, near the village of Ithaca, and he agreed that, if she would let him have the proceeds of her farm, he would buy the Kinkerter place, and remove

thereto, and would give her a deed of the premises in question, provided that she would agree to give him one-third of the hay, wheat, oats, clover-seed, corn, and apples that would be raised on said farm during his life; that, in consideration thereof, he would pay the taxes assessed upon said land; that she accepted her father's proposition, and went with her father to Kinkerter, assigned her mortgage to him, and paid over to him the $1,000 in cash; that in the spring, after her father had removed from the farm, she refused to go upon the farm, because her brother, who was about to get married, occupied the homestead, and her father insisted that her brother should remain there for an indefinite period, until he, the father, should build a house for the brother on the adjoining 80 acres, which was to go to the brother. She claims that she told her father that no one house was large enough for two families. The father finally agreed to build a house for the brother at once, and complainant moved upon the farm, the father built the house for the brother, and the brother removed thereto. She claims that the deed to her was to be delivered at once, but the father, when first asked for the deed, told her that he had not yet obtained his wife's signature, but he promised to obtain it; that afterwards he represented to her that his wife refused to sign the deed, but assured her that she should be protected; that she relied upon her father's promises made from time to time; that the father continued making these promises, and giving these assurances, until two years before this suit was brought; and that this suit was instituted because she learned that her father had sold and conveyed 10 acres of the land in question to defendant Munson.

Defendant Kelly denies that he contracted to give a deed of the land to complainant, but claims that he had from time to time, during complainant's married life,

advanced certain moneys to her; that he had taken up a mortgage upon her farm, and by charging her with these advances, and for what he had given her from time to time, he makes up an account against her, charging interest thereon, which he claims more than equals the amount of money received by him; that he had given her at one time a cow, at another four sheep, a pig or two, a pair of mules,—"at different times I gave her $5;" that he bought some furniture for them, and paid $10 or $11 for it; that he bought a stove for them; "let them have some wood;" "some seed-wheat;" "some oats for seed;" "two or three tons of hay, which he came and got whenever he was out."

While complainant admits that her father had given her certain moneys, helped her in various ways, and had given her some articles of furniture, she insists that other articles charged against her were simply exchanges, and that her husband had worked for her father on numerous occasions, in payment for articles charged.

Whatever the fact may be regarding the father's account, there is no testimony tending to show that complainant was under any contract or legal obligation to repay these amounts. Indeed, the father insists that complainant voluntarily pressed this money upon him, and that, in consideration of it, she was to be a tenant from year to year upon his farm, and that she went upon the farm with this understanding. He says that his daughter told him, when she gave him the money, that she wanted him to take it because there was a judgment against her husband, and that she was afraid the sheriff would get this money. It appears, however, that the judgment had been paid some time before this. He says that "she said, if they bought any land, she was afraid that judgment would take it." Again, he claims that he and his daughter figured up about how much he had

let them have, and she said to him, "You have earned all that money, made it yourself, and I would like to settle up with you and pay you off." Again, he says, "She said, 'I want you to take this money; it all came by you, and I know, if you take it, it will be taken care of;' and I said, 'In time you will get it all back, likely.'"

The complainant set up in her bill that in December, 1887, the defendant Kelly pretended to sell and convey to Rudolph Walker, complainant's husband, five acres of said land, but that the same was done without her consent or her knowledge until after the conveyance was made. Rudolph Walker is made a party defendant. Defendant Kelly answers, admitting this conveyance, and alleging that it was done with the full knowledge of complainant. The testimony tends to show that the only consideration paid for this conveyance was $55, while the record indicates that the land was worth at least two or three times that amount. Walker testifies that the reason he bought it was that he wanted to be sure of something, and that defendant Kelly told him that his wife's claim to the land had outlawed.

The equities of this case seem to us to be with the complainant, and she is entitled to the relief prayed for. The admitted facts tend strongly to corroborate her story; indeed, what was done is explicable only upon her theory. It is not reasonable to suppose that complainant would surrender the entire proceeds of her farm—all she had—to defendant Kelly, and that the only consideration which she was to receive was that she was to be a mere tenant from year to year upon this land. He concedes that she was to move upon the farm, but he does not set up any understanding or arrangement with reference to the occupancy which was made at the time of the payment of the money; but he now insists that

the arrangements were made subsequently, and that she went upon the farm as a tenant from year to year, and that he was to receive one-third of the crops.

It is urged that at the time of this agreement the farm was the homestead, and that the agreement to convey was void because the wife did not join in that agreement. If the premises had continued to be a homestead, complainant would not be entitled to the relief prayed (*Phillips v. Stauch,* 20 Mich. 369); but here defendant Kelly and wife, in pursuance of the contract, removed from the premises, established their homestead elsewhere, and complainant was put into possession. Specific performance of this contract is enforceable because of the subsequent part performance. The delay is immaterial, the only question being, did the parties act in pursuance of the contract made?

Again, it is said that the contract is indefinite regarding the reservation as to crops. It is not unusual to lease farms "on shares." This very land had been occupied for six years by complainant in accordance with an understanding that defendant Kelly was to receive one-third of the crops, naming them, and no difficulty seems to have arisen. Complainant claims that the land is hers, subject to an agreement to turn over to her father annually one-third of certain crops during his life. Her father insists that the land is his, and that complainant is his tenant, and under an agreement to turn over to him one-third of the crops annually. There has been no difficulty regarding the crops, or Kelly's share of them. The deed may contain a reservation which will amply protect defendant Kelly.

It is insisted, however, that the contract is not enforceable, because the wife cannot be compelled to release her dower. There is no question but what the contract here was for a deed from both Kelly and wife, and, while the

wife cannot be compelled to release her dower *(Richmond v. Robinson,* 12 Mich. 193; *Phillips v. Stauch,* 20 Id. 369), there is no reason why complainant may not have a decree for specific performance so far as defendant Kelly is concerned, and for compensation as to the dower interest of his wife. In *Phillips v. Stauch, supra,* the wife did not join in the contract, which related to a homestead. The court could not decree a conveyance of the homestead, for, under the statute, a deed by the husband alone of the homestead is wholly invalid. The present case is without that complication. Here there is no partial alienation, no severance of the property, and the dower interest is unaffected. There is no legal obstacle to the conveyance by a husband of his interest in real estate, and, if so, why may not the husband be compelled so to convey, when he has contracted so to do, and to give compensation wherein he has failed to perform his contract?

The complainant is entitled to a deed from defendant Kelly of the premises described in complainant's bill, subject to a reservation of one-third of the crops above named to defendant Kelly, for and during his natural life, upon payment of the taxes upon said premises, and complainant is also entitled to compensation for the present value of the contingent right of dower of the wife of defendant Kelly.

The decree below is reversed, and a decree entered here in accordance with this opinion, and the record remanded, with directions to proceed to the award of compensation in accordance herewith, with costs of both courts to complainant.

MORSE, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.