GEORGE TEBEAU v. THOMAS S. RIDGE, Appel-
lant.

GEORGE TEBEAU, Appellant, v. THOMAS S.
RIDGE and EFFIE RIDGE.

In Banc, November 17, 1914.

1. **SPECIFIC PERFORMANCE: Inference of Fact: Deference to
   Chancellor.** Inferences in their last analysis are but presump-
   tions of a milder sort, and presumptions of fact fly away upon
   the entrance of proof. Where plaintiff swore that he did not
   know that defendant had a wife at the time the contract of
   lease with an option to purchase was entered into, and on the
   other side there are facts from which it could reasonably be
   inferred that if plaintiff did not know that defendant was
   married at that time he ought to have known it, the appel-
   late court will defer to the finding of the chancellor on the
   point.

2. **————: Allegation of Ownership.** A decree for the specific per-
   formance of a contract for the purchase of land will not be
   reversed because the petition does not contain an allegation
   in apt terms that defendant was the owner of the land at
   the time of bringing the suit, where objection to the petition
   was first made in the motion in arrest, and the case was tried
   throughout by both parties as if it contained such allegation
   and defendant testified he was the owner. [Sec. 2119, R. S.
   1909.]

   **————: Lease: Consideration for Option to Purchase.** When
   a lease of land for a period of years contains an option to the
   lessee to purchase at any time during the period at stipulated
   prices, the payment of the stipulated rent reserved is a suf-
   ficient consideration to support the agreement to convey, and
   such option is a continuing offer to sell at the price named
   up to the end of the period. And though such option agree-
   ment may not with precision dovetail into the lease contract,
   yet being a part of the same instrument and having been
   written by the lessor and signed by both, it will be considered
   an integral part of the contract.

4. **————: Equity: Evidence: Finding of Facts Not Pleaded.**
   In a broad sense an equity suit is to be tried *de novo* on appeal;
   and though the chancellor may have made findings outside both
   pleadings and proof, yet the judgment will be affirmed if there
   is enough in the pleadings and proof to fully uphold the decree.

5. ———: **Wife's Dower: Diminution.** Where the vendee, under a contract for the sale of the land signed by the vendor alone, is entitled to specific performance, there should be a diminution of the purchase price named in the contract by the present value of the wife's inchoate dower, estimated by the tables of mortality and by the statutes of present values of estates less than a fee. In other words, the contract being for the sale of the property for a named price, and that contract being one which, under the evidence, equity, in the exercise of a sound judicial discretion, should enforce, the vendor should not receive the whole purchase price, and then as a reward for his breach of contract be permitted to keep one-third of the title in a life estate in his family, but the value of that inchoate dower should be calculated in the manner prescribed by statute and deducted from the purchase-price agreed upon, and then the title be decreed to be, upon payment of the balance, in the vendee, subject to the wife's inchoate dower. [Overruling Aiple-Hemmelmann Real Estate Co. v. Spelbrink, 211 Mo. 671.]

6. ———: ———: ———: **Knowledge That Vendor was Married, etc.** The facts that the vendee at the time that the contract of purchase was signed by the vendor alone did not know that he had a wife; and that the vendor, prior to his refusal to convey the land to the vendee according to the contract, had not requested, and did not intend to request, his wife to sign the deed of conveyance, do not in anywise affect the interest of the wife in the land, nor authorize the court to compel her to convey her dower therein, nor do they preclude the court from decreeing specific performance by a diminution from the purchase price of the value of her inchoate dower. They only go to matters of good faith, as such may affect the vendor or vendee.

Appeal from Jackson Circuit Court.—*Hon. John G. Park,* Judge.

REVERSED AND REMANDED (*with directions*).

*Hadley, Cooper, Neel & Wilson, Boyle & Priest* and *Scarritt, Scarritt, Jones & Miller* for plaintiff-appellant.

(1) Defendant contends that the petition does not state a cause of action because as he says, "there is no allegation in it that the appellant was the owner of

the land described.'' There is no merit in this contention. Sayre v. Devore, 99 Mo. 446; R. S. 1909, sec. 1836; Pomeroy v. Fullerton, 113 Mo. 440. (2) Specific performance of an optional agreement to sell real estate will be enforced by a court of equity. Kirkpatrick v. Pease, 202 Mo. 493; Real Estate Co. v. Spelbrink, 211 Mo. 67; Woodbury v. Gardner, 77 Me. 69; Couch v. McCoy, 138 Fed. 696; Watts v. Kellar, 56 Fed. 1. (3) The option to purchase here in question is an integral part of a contract of lease. Every consideration expressed in the lease is a consideration for each and every stipulation of the agreement. The option stipulation should not be criticised by defendant on account of the place it occupies in the body of the written contract, for the instrument was written by Ridge himself and under the well known rules applicable where an agreement is drawn by one of the parties thereto, it is to be construed most strongly against the one that drew it. Surety Co. v. Pauley, 170 U. S. 133; Wilson v. Cooper, 95 Fed. 225; Hurley v. Fidelity Co., 95 Mo. App. 94. The evidence is uncontradicted that Ridge expressly demanded, in consideration of his agreeing to give the option of purchase in the lease, that he be given free access to, namely, passes, to the baseball park; and in accordance therewith he wrote in the lease the following: ''Said Ridge to have free access to said premises on all occasions.'' This part of the agreement was fully complied with by Tebeau, for he not only gave passes to Ridge but he also gave passes to the ball park to members of Mr. Ridge's family. This alone is a sufficient consideration for the option to purchase. It is not necessary, however, to stand upon this alone, for the authorities are many and conclusive to the effect that the making of the lease and the things therein required to be performed by the lessee, such as the payment of rent, are a sufficient consideration for an option to purchase expressed in the lease. Jones on Landlord and Tenant, sec. 387;

18 Am. & Eng. Ency. Law (2 Ed.), 631; Hayes v. O'Brien, 149 Ill. 403, 23 L. R. A. 555; Souffrain v. Mc-Donald, 27 Ind. 269; In re Hunter, 1 Edwards' Ch. (N. Y.) 1; Stansbury v. Fringer, 11 Gill & J. (Md.) 149; 24 Cyc. 1021; Monihon v. Wakelin, 6 Ariz. 225; Mc-Cormick v. Stephany, 61 N. J. E. 208. (4) Of course we deny that Ridge had any right or power by his *ipso dixit* to annul this stipulation of the contract or, in other words, withdraw this express option to purchase. And if our contention is sustained, viz., that the stipulation relative to the purchase of the land was one of the mutual or reciprocal stipulations between the parties that constituted a part of the consideration for the others, then it is immaterial whether Ridge attempted to withdraw from it or not. (5) Upon the court ordering specific performance by defendant Thomas Ridge, plaintiff is entitled to a diminution of the purchase price, for Ridge's wife refuses to convey or relinquish her inchoate right of dower.

*Johnson & Lucas* for defendant-appellant.

(1) The petition does not state a cause of action. Anderson v. Gaines, 156 Mo. 669; Gentry v. Rodgers, 40 Ala. 446; Mallinckrodt v. Nemnich, 169 Mo. 397. (a) There is no allegation in it that the appellant was the owner of the land described. (b) The allegation "that plaintiff has faithfully complied with and performed all the terms, covenants and agreements therein contained, and binding or obligatory upon him up to the time of the institution of this suit" is meaningless, because it leaves wholly to conjecture what parts of the contract plaintiff means to say are binding on him. It is not equivalent to saying that plaintiff has kept all the terms of the agreement on his part, and if it were it would not be sufficient. In a suit for specific performance, plaintiff should state specifically and minutely what he has done. (2) The decree is

erroneous on the face of the record. Baldwin v. Whaley, 78 Mo. 186; Needles v. Ford, 167 Mo. 512; Schneider v. Patton, 175 Mo. 684; Roden v. Helm, 192 Mo. 71. (a) The court does not find, and could not properly find that appellant was the owner of the land described in the petition, because this is not alleged as a fact in the petition. (b) The court finds that appellant had knowledge that said land was being obtained for a baseball park. There is no such allegation in the petition. (c) The court finds that respondent complied with and performed all the terms, covenants and agreements contained in said agreement and binding or obligatory on him. This finding follows the petition. It meant nothing in the petition and means nothing here. No determination is made as to what covenants were binding on respondent, if any. (d) The court finds that respondent entered upon the said land under said agreement and made valuable and permanent improvements thereon. No allegation in the petition supports this, nor was respondent required by the lease to make any improvements. (e) The court finds that appellant insisted upon free access to the ground as one of the conditions of dealing. This is not alleged in the petition. (f) The court fails to find that defendant had no adequate remedy at law, and properly so, because although this was alleged in the petition, there was no proof of it offered. Yet if plaintiff had an adequate remedy at law, he was not entitled to a decree. (3) The finding and judgment of the court is contrary to the evidence. 1 Page on Contracts, sec. 41; Turner v. Mellier, 59 Mo. 536; Mers v. Ins. Co., 68 Mo. 127; Warren v. Costello, 109 Mo. 344; Hollman v. Conlon, 143 Mo. 378; Daly v. Carthage, 143 Mo. 569; Davis v. Petty, 147 Mo. 374; Elliott v. Delaney, 217 Mo. 19; Richardson v. Hardwick, 106 U. S. 252; Philpot v. Gruninger, 14 Wall. 570; Railroad v. Bartlett, 3 Cush. 224; Railroad v. Deane, 43 N. Y. 240; Brown v. Savings Union, 134 Cal. 452; Martin v. Coudrey, 110

Pac. 451; Gordon v. Darnall, 6 Col. 302; Ford v. Ecker, 86 Va. 79; Houts v. Hillman, 228 Mo. 668; Gottfried v. Bray, 208 Mo. 663; Cady v. Straus, 97 Va. 707; Kirby-Carpenter Co. v. Barnett, 144 Fed. 637.

FARIS, J.—Suit from Jackson county, in equity, for specific performance of a contract to convey land. Tebeau (hereafter called plaintiff to distinguish him, since the case is here on cross-appeals) had a decree against Thomas S. Ridge, hereafter called defendant, but upon the refusal of the court nisi to diminish the purchase price by the value of the inchoate dower of Effie S. Ridge, wife of defendant Thomas S. Ridge, hereafter called Mrs. Ridge, said Tebeau appealed.

The status of these appeals, which have been consolidated by stipulation, is, then, that defendant is appealing as against plaintiff, for that the latter obtained any decree whatever; while plaintiff is appealing as against Mrs. Ridge for whom the court found, for that no diminution was decreed to him for the inchoate dower of Mrs. Ridge. The latter does not appeal.

The learned trial court made and filed his findings of fact, which throw much light upon the case made and are, besides, the subject of criticism leveled at them by defendant. For the latter reason and since they succinctly set out the facts and greatly shorten our statement, we set them out, as follows:

"The court being fully advised in the premises, doth find the issues in favor of the plaintiff and against the defendant Thomas S. Ridge, and doth further find from the proofs and evidence that the allegations of fact in plaintiff's petition are true; that the defendants, Thomas S. Ridge and Effie S. Ridge, are and were at all the times herein referred to husband and wife; that on or about December 31, 1901, the plaintiff and defendant Thomas S. Ridge, for value received, and in consideration of the mutual agreements and covenants therein contained and the rents therein

reserved, entered into, executed and delivered each to the other, a written agreement in words and figures following, to-wit:

" 'This Article of Agreement Witnesseth: That Thomas S. Ridge has this day rented to George Tebeau in the present condition thereof the tract of ground bounded by Olive street on the west, Twentieth street on the south, Prospect avenue on the east and the line of the Kansas City Belt Line Railway on the north in Kansas City, Missouri.

" 'It is understood by the clause which follows relative to subleasing that said Tebeau shall have the right to rent the above described premises to others for occasional unobjectionable entertainments.

" 'Said Ridge to have free access to said premises on all occasions.

" 'Said Tebeau shall have the option of purchasing said property during the first year of this lease at ar d for the price of $30 per front foot on Olive, Wabash and Prospect streets, during the second year at $35, after the second year and until the fifth year at $40 per foot, and between the fifth and tenth year at and for the price of $50 per front foot as above measured on the three streets frontage; for the period of ten years from the first day of January, 1902, on the following terms and conditions, to-wit:

" 'For the use and rent thereof the said Tebeau hereby promises to pay Thomas S. Ridge or to his order seven hundred dollars per year for the first five years and nine hundred dollars per year for the next five years' time above stated, and to pay the same quarterly at the first of each quarter; that he will not sublet or allow any other tenant to come in with or under him without the written consent of said Thomas S. Ridge; that all of the property of said Tebeau on said premises, whether subject to legal exemption or not, shall be bound and subject to the payment of said rents; that in default of the payment of any quarterly

installment of rent for ten days after the same is due, he will, at the request of said Ridge, quit and render to him the peaceable possession thereof, but for this cause the obligation to pay shall not cease; and finally, at the end of the term he will surrender to said Ridge, his heirs, or assigns, the peaceable possession of said premises, and at the expiration of said lease the said Tebeau shall have the right to remove from said grounds all buildings erected by him thereon, upon the express condition of his having paid all rents due under this lease and not otherwise.

" 'In witness whereof, the parties have subscribed to duplicate copies hereof, to be retained by each party hereto.'

"That said agreement was duly acknowledged by the plaintiff on the 23d day of January, 1905, and thereafter duly recorded upon the records of the recorder's office of Jackson county, Missouri, at Kansas City, on the 26th day of January, 1905, in Book B. No. 959, at page 14 of said records; that defendant Ridge had knowledge that said land was being obtained by plaintiff for a baseball park; that plaintiff has faithfully complied with and performed all the terms, covenants and agreements contained in said agreement and binding or obligatory upon him; that he entered upon the said land under said agreement and made valuable and permanent improvements thereon; that the defendant, Thomas S. Ridge, insisted upon free access to the grounds and games as one of the conditions for dealing; that on or about July 31, 1909, plaintiff exercised the option of purchasing the property described in the said agreement and elected to purchase the same according to the terms of said agreement, at and for the price and sum of fifty dollars per front foot, as measured on said Olive, Prospect and Wabash streets, it being the extension of said Wabash street across said tract of real estate between said Olive and Prospect streets, in Kansas City, Missouri; which said

date, namely, July 31, 1909, being the time of the exercise of the said option and the election by the plaintiff to purchase said property, occurred between the fifth and tenth year of the period of the said agreement and lease; that the amount of frontage of the above described real estate on the streets named in the said agreement, to-wit, Olive, Wabash and Prospect streets, is 1364 feet, and the price thereof fixed by the said agreement at the date aforesaid at fifty dollars per front foot as measured on the said streets is sixty-eight thousand two hundred dollars; that the plaintiff did on July 31, 1909, concurrently with and as part of the transaction of exercising his said option and electing to purchase said real estate under and according to the terms of the said contract, tender and offer to pay to the defendant Thomas S. Ridge the full price of the said real estate, to-wit, the sum of sixty-eight thousand two hundred dollars, in lawful money and legal tender of the United States, and did thereupon, and as part of the same transaction notify said Ridge of his exercise of the said option and his election to purchase said land and of his tender and offer to pay said purchase price thereof, and thereupon the defendant Thomas S. Ridge rejected and refused to accept said tender, and failed and refused to carry out the terms of the said contract and denies any and all liability and obligation to sell or convey the said real property under the terms of the said agreement; that the plaintiff at all times from and after the said date, to-wit, July 31, 1909, has been ready, willing and able to purchase and pay for the real estate according to the terms of said contract, and is now willing and desirous of so doing, and now offers to pay the defendant, Thomas S. Ridge, the price of said land according to the terms of said agreement, and does now request the conveyance of the said real estate to him according to the terms of said agreement.

"The court further finds that the defendant Effie S. Ridge declines and refuses to join her husband, the defendant, Thomas S. Ridge, in any conveyance of said land to the said plaintiff; that the defendant, Thomas S. Ridge has never requested his wife, the defendant Effie S. Ridge, to join him in any such conveyance and does not intend to make any such request of her; that at the time of the making of the agreement aforesaid the plaintiff did not know that the defendant Thomas S. Ridge was a married man.

"The court doth further find and declare that the agreement in the plaintiff's petition mentioned and set out herein ought to be specifically performed and carried into execution, and the title of the defendant Thomas S. Ridge in and to the land therein described, conveyed or divested out of him and invested in the plaintiff."

To these facts, which as found by the court were fair and correct, except as may be discussed later on in the opinion, we may add that in February, 1906, plaintiff wrote defendant and requested a waiver of the provision as to subletting, or rather requested the privilege of assigning the lease to another party, though plaintiff was to retain an interest. Defendant wrote to plaintiff on February 3, 1906, saying, "As a matter of course I am willing to do what is right in this matter and will not handicap you in the negotiations contemplated." To this letter on February 5, 1906, plaintiff wired defendant from Chicago thus: "Do not understand your letter. Wire my expense if you consent to my subleasing park to purchasers of a controlling interest in the Kansas City Exhibition Co." Defendant in reply on the same day wired plaintiff, "If you will waive purchase-option will consent to sublease." Plaintiff wired in reply thus: "Prefer running club myself to waiving purchase-option. If I dispose of control and you agree to sublease will increase rent for last five years to twelve hundred dol-

lars per year." Answering this by wire defendant said: "Purchase-option provision without consideration, therefore not binding. With this understanding only would I consent to sublease." In answer to this plaintiff wired defendant: "Option is not without consideration. Will not agree to such understanding. Will you consent to sublease as requested? Question can be raised when option is exercised." This exchange of telegrams ended negotiations till July, 1909, at which time the tender mentioned in the findings of the court was made, and a quitclaim deed of conveyance was prepared and tendered to defendant for his and Mrs. Ridge's execution, which being refused this action followed.

There are but few disputed questions of fact in the case. The insufficiency of the evidence strenuously urged upon us by defendant, arising, for the major part, from alleged defects in the option clause itself and not from any very serious contradictions in the facts shown by the respective parties upon the trial.

There was a contradiction as to whether plaintiff had knowledge when the lease was signed, of the fact that defendant had a wife. This is to be resolved by us upon the proof just as the learned court *nisi* resolved it, since it rests on the one side upon the sworn oath of plaintiff that he was ignorant of the defendant's domestic status, and upon the other side upon inferences and presumptions that if he did not know it he ought to have known it. Since inferences are, in the last analysis, but presumptions of a milder sort and since when proof steps in a presumption must needs fold its tent and steal away, we may well incline in logic as well as in law to the findings on this point of the court below.

The proof showed that at the next nearest birthday anniversary defendant was fifty years of age and Mrs. Ridge was forty-seven; that their anniversaries fell respectively on November 26, 1909, and September

2, 1909. So that the defendant is two years, nine months and six days older than Mrs. Ridge.

If other facts shall become important during the discussion of the points made, we shall state them in the opinion.

I. Three contentions are made by defendant and one by plaintiff in the cross-appeals before us. Defendant carrying upon his appeal the weightier burden strenuously urges (a) that the plaintiff's petition does not state a cause of action; (b) that there was no consideration for the option to purchase, contained in the lease, and (c) that the evidence adduced does not warrant the decree entered below. Plaintiff while per-force expressing his contemplated acquiescence should this court hold against him, yet urges with much earnestness that he is entitled to have the purchase price of the land in dispute diminished by the present value of the outstanding inchoate dower of defendant's wife therein. Three of these contentions go to the question whether there should be a decree at all in favor of plaintiff; the other concerns itself alone with the contents of that decree. We will discuss them in the order stated.

**Issues: Specific Performance.**

II. The petition on which the case was tried did not aver in apt terms, that defendant Thomas S. Ridge was at the time of the bringing of the suit the owner of the land, conveyance of which, through a decree for specific performance, is here sought; but there was set out in full in the petition the instrument of lease, which contained the option to purchase. No demurrer was filed by defendant, nor even an objection made to the introduction of any evidence in the beginning of the trial; nor was any attention whatever paid to such alleged defect, till by a motion in arrest there was urged

**Specific Performance: No Allegation of Ownership.**

by defendant as a reason for the arrest of judgment this, among other things, to-wit: "Because the *position* [sic] does not state a cause of action." We know of course that the error noted is either stenographical or typographical.

The most casual examination of the record discloses that both parties treated the case upon the trial as if the petition did state that defendant owned the property; such ownership was admitted in the testimony of the defendant himself, and manifestly this fact throughout the trial was regarded by both sides as a thing conceded. Nor is any contention now being urged by defendant that he did not in fact own the land. He and his wife both swear that he owned it; but while the proof, without objection, expressly showed such ownership, the petition did not expressly aver it. If there were aught of substance in the contention of learned counsel for defendant in this behalf; if their position were not bottomed upon sheer, bald technicality, or even if they had in a timely way lodged objections to the petition, we might pause to examine it more carefully. But their attitude upon the trial regarded, in that they tried this case in every respect as if the averment now contended for had been in the petition, and the fact that they are in no manner hurt, lead us to consider as apposite what was said by GANTT, J., in Sawyer v. Wabash Railway Co., 156 Mo. l. c. 476:

"The parties may try the case as if the omitted averment was in the petition or other pleading, and it is perfectly competent for the court even after verdict to amend in accordance with the proofs. In this case it would have been entirely proper for the court in aid of the verdict to have permitted the petition to have been amended, if defective, and as all the facts are before this court we will, if necessary, treat it as amended. [Darrier v. Darrier, 58 Mo. 222.]

"Our statute of amendments is very broad, and we are forbidden to reverse any judgment 'for omitting any allegation or averment without proving which the triers of the issue ought not to have given such a verdict.' [Sec. 2113, R. S. 1889; Seckinger v. Mfg. Co., 129 Mo. l. c. 598; Grove v. Kansas City, 75 Mo. 672; Thompson v. Kessel, 30 N. Y. 383.]

"This doctrine finds abundant support in the decisions of this court construing the statute.

"We are cited to a case in New York which illustrates the exact point under discussion. In Rowland v. Sprauls, 21 N. Y. Supp. 895, affirmed 66 Hun, 635, a material allegation of insolvency had been omitted and it was urged by appellant that it was indispensable, but the court said that 'the evidence, which was admitted without objection, abundantly established the insolvency of the mortgagor. The complaint could have been amended by the trial court, if an amendment was necessary, for it would not have changed the nature of the action. It is not necessary to send the case back for the purpose of amending the complaint. That may be done by the appellate court. . . . The course of the trial was the same as if the complaint had contained the needed allegation, so that the defendant was neither misled nor prejudiced by the omission.' All of which applies as well to this case.

"It is perfectly plain that the omission to state defendant had not paid this money to the other subscribers in no manner prejudiced the defendant."

This doctrine is at least salutary, and makes for more expeditious justice, to the great hurt it may be to attenuated technicality, which however is not now to be viewed with such a friendly face as in days of yore. Likewise it is in consonance with what we conceive to be both the letter and the spirit of the Statute of Jeofails (Sec. 2119, R. S. 1909), which statute, in addition to the apposite provisions in the eighth and ninth subdivisions thereof furthermore forbids—not so appositely

mayhap, but nevertheless forbids—us to reverse a case "for any other default . . . of the parties or their attorneys by which neither party shall have been prejudiced." To the same general import and intent likewise are the provisions of section 2082, Revised Statutes 1909.

Besides this there are cases from other jurisdictions which seem to hold that the vendee does not need to offer proof of the vendor's title; the fact that the vendor assumed to sell raised the presumption of title, naught else appearing. [Prince v. Bates, 19 Ala. 105; Gartrell v. Stafford, 12 Neb. 545.] In this view the setting out in the petition *in haec verba* of the paper containing the option to buy was a sufficient compliance with any requirement to plead ownership in the defendant. We disallow this contention.

III. Was there any consideration to support this option? Upon this phase of the case defendant contends most earnestly that there was not. The point is confessedly troublesome and fairly close. Some one or two facts from the record may help us to determine this vexing point, viz.: defendant himself wrote the instrument of ground lease which contained the option about which this action turns, and both plaintiff and defendant agree that the option to buy upon the very terms and within the very time in said instrument set out, was to be a part of the lease. So much upon the latter point is said in full knowledge of the rule that where parties have reduced their contracts to writing, conversations changing their written agreements, in the absence of fraud averred, are no more to be received or heeded in equity than in a suit at law.

But the point is stressed by learned counsel for defendant that while the option to sell was a part of the ground lease instrument, it was not "*an integral*

261Mo36

*part''* thereof. If by integral part counsel mean an homogeneous part, dove-tailing in logical precision and grammatical and rhetorical construction with what preceded and with what followed it, then the point is well taken. But since the defendant wrote it and is therefore to have invoked against him for that fact a more strict and harsh construction, and since it is all contained in a single document executed by the same signing and at the same time, we do not think the case should break solely upon the fact that it is lacking, in the setting in which we find it, finished completeness. For "integral," the books say, means "lacking nothing of completeness." [Webster's Dictionary.]

Touching an option to buy made by the vendor to his lessee and contained as here in a lease and sought to be exercised only in the last week of a ten-years' period, Justice FIELD of the United States Supreme Court, in the case of Willard v. Tayloe, 75 U. S. l. c. 564, said:

"The covenant in the lease giving the right or option to purchase the premises was in the nature of a continuing offer to sell. It was a proposition extending through the period of ten years, and being under seal must be regarded as made upon a sufficient consideration, and, therefore, one from which the defendant was not at liberty to recede. When accepted by the complainant by his notice to the defendant, a contract of sale between the parties was completed. This contract is plain and certain in its terms, and in its nature and in the circumstances attending its execution appears to be free from objection. The price stipulated for the property was a fair one. At the time its market value was under fifteen thousand dollars, and a greater increase than one-half in value during the period of ten years could not then have been reasonably anticipated."

In the cases of Tilton v. Sterling Coal & Coke Co., 28 Utah, 173, and Page v. Martin, 46 N. J. Eq. 585, the

options to buy were contained in the leases and except for physical juxtaposition, as here in the instant case also, such options were no more "integral parts" of the leases than is the one here. The consideration mentioned in the above cases did not expressly, nor by any implication, refer to the option or include it, nor was it syntactically included, though physically it was in the same instrument. In both cases it was an integral part, in that it was a part of the whole or entire instrument of lease, but homogeneity was there, as here, utterly lacking. Yet it was said by GARRISON, J., quoting from the earlier case of Hawralty v. Warren, 18 N. J. Eq. 124:

"'It is now well settled that an optional agreement to convey, without any covenant or obligation to convey and without any mutuality of remedy, will be enforced in equity if it is made upon proper consideration, or forms part of a lease or other contract between the parties that may be a true consideration for it.'" [Page v. Martin, 46 N. J. Eq. l. c. 593.]

We are fully convinced when an option to purchase is contained in a lease that the payment of the stipulated rent reserved is a sufficient consideration for the agreement to convey, and that such option is a continuing offer to sell at the price named up to the end of the period therein limited; so that the offer may not be withdrawn, within such period, without the consent of the vendee. This view in our opinion is borne out and upheld fully by the above cases as well as by the well-nigh universal holding of the cases and by the language of the textbooks. [McCormick v. Stephany, 61 N. J. Eq. 208; Stansbury v. Fringer, 11 Gill & J. (11 Md.) 149; Souffrain v. McDonald, 27 Ind. 269; Hayes v. O'Brien, 149 Ill. 403; 24 Cyc. 1021; Jones on Landlord and Tenant, sec. 387; 18 Am. & Eng. Ency. Law, 631; Willard v. Tayloe, 75 U. S. 557; DeRutte v. Muldrow, 16 Cal. 505; Corson v. Mulvany, 49 Pa. St. 88.]

On the other hand the Missouri cases cited by learned counsel for defendant do not in our view bear out their contention upon this point. A fair resume of the cases (largely from plaintiff's brief, but with emendations of our own) follows:

The first case, Mers v. Insurance Company, 68 Mo. 127, was a suit upon an insurance policy, and the question was whether or not plaintiff had title to the property which was burned. In an attempt to show title, plaintiff exhibited a lease and also an option to buy. It was not proven or claimed that the lease and the option were in any way connected, nor had the option to purchase ever been exercised. It was therefore held that plaintiff failed to show sufficient title to maintain the action upon the insurance policy.

The next case, Davis v. Petty, 147 Mo. 374, was one where defendant entered into a contract with plaintiff for the sale of the west half of certain land for $640, and further agreed that whenever plaintiff paid him a like sum he would convey to him the east half of the same land. This contract was made August 4, 1888. There was not, as there is in the instant case, any time fixed within which the option was to be exercised. It was not until December, 1894, more than six years after this contract was made, that plaintiff took any steps toward exercising the option contained in said contract. In the meantime, defendant, the owner, had made valuable improvements on the land, costing more than the sale price mentioned in the option. These improvements by defendant were made with plaintiff's knowledge but he said nothing, nor gave any indication that he was ever going to exercise his option to buy. The court held that under all the circumstances of the case, the option contract had been abandoned by the parties and that plaintiff had been guilty of laches in exercising his option. Specific performance was therefore denied. There was no lease in that case.

In the next case, Warren v. Castello, 109 Mo. 338, one Mreen in 1884 had given Warren, plaintiff, an agreement to sell her certain land for $2000 before March 1, 1889. No tender or demand was made during the life of Mreen, but after his death a demand and tender was made to his executrix. It was held that plaintiff, being a married woman, was not capable of making a contract, and that there was no consideration whatever for the option. There was a lease mentioned in this case, but there was not and could not be any claim that the lease was a consideration for the option, because the lease was made long prior to the giving of the option and plaintiff was in possession at that time under the lease. The option agreement stood alone and no consideration was mentioned in it, and none was proven. Pertinent to our point here in issue, the above case (l. c. 343) holds: ''The principle on which this seeming exception is based is that the bond or conditional covenant to convey upon the option of the lessee or vendee is a continuing offer on the part of the vendor or owner, until accepted within the time and on the terms limited in the option, and when accepted it becomes a valid agreement, supported by mutual promises of competent parties. [Willard v. Tayloe, 8 Wall. (U. S.) 557; Railroad v. Bartlett, 3 Cush. 224; Welchman v. Spinks, 5 Law Times Rep. (N. S.) 385; Railroad v. Evans, 6 Gray, 25; Waterman on Specific Performance, sec. 200.]''

The next case, Elliott v. Delaney, 217 Mo. 14, was a suit in ejectment. An option to buy figured in this case, but the question of consideration did not arise. In fact, it was conceded by the court that there was a consideration for the option and that the same was valid. This case was reversed and remanded on the ground that the decree entered by the court did not conform to the pleadings in an ejectment suit.

The next case cited by counsel for Mr. Ridge is Hollmann v. Conlon, 143 Mo. 369. In that case there

was a contract of sale rather than an option, and no lease was involved. Specific performance was denied because plaintiff had not acted within the time specified in the contract of sale, nor had he offered to pay the full purchase price.

It follows, we think, that this contention of defendant is not well taken.

IV. With the contention that the evidence does not warrant the decree, or any decree here for plaintiff, we are likewise unable to agree. Since this case sounds in equity and the findings of the **Specific Performance:** learned trial judge sitting below as a **Sufficient** chancellor are not binding upon us, but **Evidence.** persuasive merely, we have gone into this point carefully. We set out in the statement the facts as we gather them and find them from the record, and we are convinced that there is enough evidence to fully sustain a decree of specific performance, and that in so holding the trial judge did not err. It would subserve no useful purpose to set out again these facts; it would be but to eat up space. We may give passing notice to the contention of defendant that in the finding of facts made by the trial judge, more was found than was pleaded. We do not think that the record bears out this contention in the sense that the court below so found any vital facts. Some of the things the learned trial court is charged with having thus found without justification from either the petition or the proof, arise as matters of law from the allegations of the petition, e. g., that plaintiff had no adequate remedy at law; others are immaterial, or worse, e. g., that the court, absent an allegation to this effect in the petition, yet found that the land was to be used for a baseball park. But we only mention these things as an evidence that we saw them; since this is an equity case and therefore to be tried in a broad sense *de novo* here, and since we are not bound to follow the learned

chancellor below, unless we find that he was correct. So, if he made findings outside both pleadings and proof, and yet there is enough in the case and in the pleadings and proof to justify us in upholding his decree generally, is there any rule of law which forbids us to do so? We think not and conclude that a decree for specific performance was fully justified by the pleadings and proof. We can not say as a matter of law that an acceptance of a contract to sell in July, 1909, at $50 a foot, the identical land upon which in 1902 defendant fixed a value of only $30 a foot, is. overreaching, or unjust or unconscionable; *a fortiori,* where the lowest and the middle and the highest prices were all of the defendant's own fixing; nor do we understand that this is urged by defendant. It follows that a decree for specific performance was proper. .

V. Which brings us to a discussion of the plaintiff's cross-appeal and requires us to ascertain, if we can, what sort of decree should be en-
**Specific Performance: Inchoate Dower.** tered. Should we affirm the case without diminution of price for the outstanding inchoate dower of Mrs. Ridge, leaving plaintiff to his action at law for relief, if any he has, or will ever have upon the facts here, or should we decree or order a decree for plaintiff after diminishing the purchase price agreed to be paid by the value of Mrs. Ridge's inchoate dower figured upon one-third of such actual purchase price?

As to certain facts of debatable value, but held in some of the cases to be of prime importance, we may state as a foreword that the court below found, as the facts fully warranted him in doing, that plaintiff when he made the lease and got the option in dispute, did not know that defendant was married. It also appears that defendant had not requested, prior to his refusal to convey the land to plaintiff, and did not intend to request Mrs. Ridge, his wife, to sign any con-

veyance of this land to plaintiff. Lest undue importance be attached to legal rules growing out of the absence of plaintiff's lack of information as to the defendant's domestic status, we concede in passing that such ignorance can in no wise affect the interest of Mrs. Ridge herself, nor can she be required by any decree we can make or order, to convey her dower. These things can go only to matters of good faith as such may affect the plaintiff and the defendant.

There is no unanimity of decision on this question of diminution of purchase price. The cases are in much confusion and irreconcilable contrariety. Three views prevail: (1) the purchaser is entitled as against inchoate dower to have the purchase price diminished by such sum as represents the present value of the wife's contingent interest, estimated by the tables of mortality and by the statute of present values of estates less than a fee (Springle v. Shields, 17 Ala. 295; Martin v. Merritt, 57 Ind. 34; Noecker v. Wallingford, 133 Iowa, 605; Bostwick v. Beach, 103 N. Y. 414; Davis v. Parker, 14 Allen, 94; Walker v. Kelly, 91 Mich. 212; Woodbury v. Luddy, 96 Mass. 1; Sanborn v. Nockin, 20 Minn. 178; Wannamaker v. Brown, 77 S. C. 64; Wright v. Young, 6 Wis. 127); and in New Jersey when refusal of the wife to convey is fraudulently brought about (Young v. Paul, 10 N. J. Eq. 401); (2) the view that the decree of the court may permit the vendee to retain one-third of purchase price as an indemnity until the wife die or convey (Springle v. Shields, supra; Bradford v. Smith, 123 Iowa, 41); and (3) the view that the vendee shall have no abatement of the agreed purchase price on account of the wife's refusal to relinquish her inchoate dower (on the ground usually that such abatement would serve to put upon the wife unfair coercion to relinquish a right given to her by law). [Barbour v. Hickey, 24 L. R. A. 763; Cowan v. Kane, 211 Ill. 572; McCormick v. Stephany, 57 N. J. Eq. 257 (unless wife's refusal was fraudu-

lently collusive with husband, in which case rule in
New Jersey is *contra*); Roos v. Lockwood, 13 N. Y.
Supp. 128; Riesz's Appeal, 73 Pa. St. 485; Graybill
v. Brugh, 89 Va. 895; Aiple-Hemmelmann Real Es-
tate Co. v. Spelbrink, 211 Mo. 671.]

The last holding in this State was in the Spelbrink
case, *supra*, where by a divided court of three to four
it was held by the majority opinion that the vendee
might, if he so wishes, take the title of the husband
at the original agreed purchase price undiminished
by the inchoate dower of the wife, but that nothing
was to be ruled so as to forbid the vendee from suing
for his damages by reason of the outstanding inchoate
dower of the wife. In the Spelbrink case plaintiff
knew that the defendant had a wife, and the option
provided for a warranty deed. In the instant case
plaintiff did not know that defendant had a wife and
the option did not provide for a warranty deed.

In reaching the judgment *supra*, it is plain that
the order came in a way *ex gratia;* that the majority
held to the view that if plaintiff would not take spe-
cific performance on the terms of taking that which the
husband alone could convey, then he should not have
specific performance at all. But let us quote, so that
no error from misunderstanding may befall. On page
706 the majority opinion says:

"A court of chancery will not specifically enforce
a contract for the sale of real estate against a married
man where his wife refuses to join him in the convey-
ance, without the vendee is willing to pay the full
amount of the purchase money and accept a deed from
him, alone, and without his wife joining therein, con-
taining the kind and character of covenants and agree-
ments as are called for by the contract. The reason for
this principle of equity is that such a court will not
lend its aid, even indirectly or remotely, to coerce a
wife to relinquish her inchoate right of dower in the
face of the statute which expressly provides that the

relinquishment of her dower rights shall be done as her own free act and deed. Besides this, dower has always been considered one of the wards of a court of chancery, and it has even extended its protecting hand to the estates of married women and minors. And if in the face of the statute and the equitable principles mentioned, the court should withhold the payment of a considerable portion of the purchase money during the life of the wife, because she refused to join her husband in the conveyance, or to subject him to an action for exemplary damages, it would be substituting in its decree, coercion and oppression in lieu of justice, equity and good conscience, which have ever characterized its judgments; and it would be no stretch of the imagination to say, that the influence and effect thereof would weigh so heavily upon him that the indirect effect upon her would be so great as to amount to a moral coercion, and as a result thereof she would rather relinquish her dower rights than to see him thus punished on account of her said declination, and thereby deprive her of her free disposition of her marital interest in her husband's real estate.

"There would be no justice or equity in such a decree, but, upon the other hand, it would amount to moral coercion and duress in so far as she is concerned, and if perpetrated upon her by an individual, that is, if he had secured a deed from her by such means, without the intervention of a court, a court of conscience would not hesitate one moment in releasing her from the fetters which bound her thereto. The law will not permit a person to acquire or retain the fruits of a contract obtained by such extortion. [Wilkerson v. Hood, 65 Mo. App. 491.]''

In my humble view the great weight of authority, both of the adjudged cases and the text-writers, adhere to the view that in a proper case "a purchaser of real estate under a contract such as here, that is, an honest one, a fair one, free from covin, overreaching,

or misuse of trust relation—supported by a valid consideration, definite in terms and not obnoxious to the Statute of Frauds—is entitled as of right to performance. The contracting parties write their own law in their contract. Courts sit to enforce the law. Hence they sit to enforce contracts—not abrogate them." [Dissenting opinion by LAMM, J., Aiple-Hemmelmann Real Estate Co. v. Spelbrink, 211 Mo. l. c. 723.] Should any, or all of the facts, that plaintiff, as here, did or did not know there was a wife in the case, or did not know that such wife would not sign, or that the defendant did not request and would not request his wife to sign, because the agreed sale price was inadequate, or had become so from an undreamed of increase in values, serve to prevent a court of equity in an otherwise just case, from decreeing specific performance? Nevertheless one or more of these reasons is to be found present and controlling in every case where diminution of the purchase price is refused and consequently specific performance denied except upon condition that the plaintiff take such title only as the sole deed of the husband will convey. I say that the authorities ought not to say so, neither do the great weight of them say so, as I read them. Performance in a proper case will, it seems, almost always be decreed, but upon terms differing and utterly irreconcilable. [See cases cited, supra, and Waterman on Spec. Per., sec. 511; 26 Am. & Eng. Ency. Law (2 Ed.), p. 83; 2 Story, Eq. Juris. (13 Ed.), sec. 779; Pomeroy's Spec. Per. of Contracts, 526.] If then such contracts are to be enforced—and the rule is that while the enforcement thereof is in the discretion of the chancellor, the discretion to be used is a sound judicial, and not a capricious, discretion, and also the rule is that other things being equal they are to be enforced—then in my opinion both the weight of authority and the reason of the thing lie with the view that there should be a diminution of the purchase price by the present

value of the wife's inchoate dower. The defaulting option-giver should not get the whole purchase price and then as a reward for his breach of contract keep one-third of the title in a life-estate in the family. Therefore, I am forced by the authorities and the text-writers, as well as by the logic and reason of the case, to follow the dissenting opinion in the Spelbrink case. This is a stronger case than the Spelbrink case; not so much stronger, it may be, as the difference in the rule connotes, but stronger nevertheless, in that plaintiff was in ignorance of the marital status of defendant, and also, in that defendant defiantly—approaching the twilight zone of fraudulently, in a constructive sense—refused to even request his wife to convey her inchoate dower; moreover the estate covered by the letter of the option, while impliedly a fee, was not agreed to be warranted.

As forecast above, the cases which refuse to require specific performance except the plaintiff take that title and estate only which the sole deed of the husband will convey, usually put refusal largely upon the ground that to do so would be to coerce the wife, but we have seen that the rule that specific performance will be decreed upon some terms is almost universal, and that some of these terms are exceedingly harsh, e. g., the retention as indemnity of one-third of the purchase price till the wife dies or conveys.

Back of all of the few cases which neither decree diminution of purchase price nor provide for an indemnity to cover inchoate but contingent dower, lies the idea that specific performance is a matter resting in the judicial discretion of the chancellor, which discretion will not be exercised, if the exercise thereof shall be beset with difficulties or shall afford opportunity of injustice, such as may happen in dealing with the wholly contingent dower of a wife in the lands of a living husband. When these few cases, which neither indemnify the purchaser nor diminish the purchase

price by reason of the inchoate dower of the wife, decree specific performance, it is done in a sense *ex gratia,* that is, the plaintiff is told in effect that he may not have that for which he sues, but if he be willing to take less than he sued for and less than the option giver contracted to sell, he may have a partial specific performance. If he will not accept this half-loaf of justice, he must then take nothing by his solemn contract.

If a decree is to be made and plaintiff is to be relegated to his action for damages on the covenants in his deed, or to a breach of a contract to convey a title free and clear of defects, what becomes of a case like this where no warranty deed is to be made, or has been agreed to be made, but where we are compelled to reach the view that a fee is agreed to be conveyed merely by the implication arising from the agreement to sell? Can plaintiff after suing in equity for and accepting that title only which defendant's sole deed will convey, absent any covenant of warranty, afterwards sue at law for damages for defendant's failure to convey a title free of Mrs. Ridge's inchoate claim of dower? We are not in this case called on to answer this question, but if the answer happen to be that absent an agreement by defendant to convey by warranty deed, then absent the right to sue at law for damages for breach of the accepted option to buy, it would result in a large loss to plaintiff and a correspondingly large reward to defendant's wife for defendant's breach of faith and contract. It would be bad policy to announce a rule of law which would result in rewarding those who wantonly break their solemn obligations.

By compelling the husband to convey at a price diminished by the present value of the wife's inchoate dower, she personally and presently loses nothing; her husband suffers a loss which somewhat like bread upon the waters may come back to the wife. If it be con-

ceded that she is coerced by her husband's present loss to an extent greater than she is buoyed up by the future hope of widowhood and dower in the land, there is no sufficient basis or reason in the view to account logically for the rule. For if she sign rather than refuse to do so, the full purchase price is paid to her spouse, and if—and this contingency must occur to aid her in either case supposed—her husband be gathered to his fathers before her, she takes her statutory interest in the money, to-wit, personal property, of her husband rather than in the land, subject only to her husband's debts. [Secs. 349 and 351, R. S. 1909.] So that upon such view the case largely falls into the category of those things "which are six of one and half a dozen of the other."

Other reasons might be urged, but the same thing has already been written and the whole matter so ably discussed as that for me to try to add anything of value to the argument and learning would be but to be presumptuous without being illuminating. I am led by the authorities to conclude that the case of Aiple-Hemmelmann Real Estate Co. v. Spelbrink, 211 Mo. 671, should no longer be followed, but that the views expressed in the dissenting opinion should be followed as being more in consonance with the reason of things and more in accord with the great weight of authority. To the cases discussed in that dissenting opinion and to the reasoning there, I refer the student who is desirous of pursuing the matter further, without taking the time and space here to reason the matter out again, even if I were able, as I am not, to add one jot or tittle of argument thereto.

It results therefore that this case should be reversed and remanded with directions to the trial court to order specific performance in favor of plaintiff, and that if within a reasonable time to be fixed by the court, defendant and his wife do not make, execute, acknowledge and deliver to plaintiff a good and suffi-

cient deed of conveyance covering the premises in controversy to plaintiff, the circuit court shall enter a decree divesting out of defendant Thomas S. Ridge all and singular the right, title, interest and estate of him, said Ridge, in the land in controversy, and vesting the same in the plaintiff, upon the payment to defendant by plaintiff of the sum of $68,200, diminished by the value as of the time of the trial, of the inchoate contingent dower of Mrs. Effie S. Ridge in the one-third part thereof, calculated at six per cent upon the basis of a life in the contingent dowress of two years, nine months and six days more than that of defendant, and being therefore the sum of $2863, and leaving to be paid to defendant the sum of $65,337. [Giauque and McClure's Tables, pp. 18, 20 and 158.] Taxes and special assessments, if any, since suit was begun to be paid by plaintiff; all costs to follow decree. It is so ordered.

Since, however, some of the views expressed in this opinion by FARIS, J., in which WALKER, P. J., and BROWN, J., concur, are in conflict with the opinion of a majority of the Court in Banc in the case of Aiple-Hemmelmann Real Estate Company v. Louis Spelbrink, 211 Mo. 671, and for the purpose of securing a single, certain, clear and authoritative utterance of the whole court on the question of whether there should be a diminution of the purchase price in specific performance on account of outstanding inchoate dower, we are of the opinion that this case, pursuant to authority conferred on this division by the Constitution, should be transferred to Banc to be there ruled on by all the brethren; which is accordingly ordered. All concur.

PER CURIAM.—The above cause coming into Banc, is reargued and submitted there with the result that the divisional opinion of *Faris, J.,* is adopted by the court. *Lamm, C. J.,* and *Graves, Brown* and

State ex inf. v. Missouri Athletic and St. Louis Clubs.

*Walker, JJ.,* concur; *Bond, J.,* dissents; *Woodson, J.,* dissents for reasons given in the principal opinion in Aiple-Hemmelmann Real Estate Co. v. Spelbrink, 211 Mo. 671.