THE STATE ex rel. THOMAS S. RIDGE, Appellant, v. JAMES B. SHOEMAKER and GLOBE INSURANCE COMPANY.

### In Banc, May 16, 1919.

1. **INTEREST:** Money Deposited in Court for Party. Where suit was brought in the circuit court against relator and the plaintiff was required to deposit in court, as a condition precedent to the rendition of a decree for specific performance in his favor, a named sum of money for relator's benefit, and that was done, and relator appealed and the judgment was affirmed, and the clerk of the circuit court, during the pendency of the appeal deposited the money in bank as a part of a general account to his credit as such clerk, and neither loaned it nor received interest on it, the relator is not entitled to recover interest on the money during the time the appeal was pending. Both the clerk and the relator must have known that the appeal would have been pending for some time, but relator was entitled to drawn down the deposit at any time, and the clerk, without an order of the court directing him to loan the money, was absolutely prohibited by the statute (Sec. 4557, R. S. 1909) from loaning it.

2. **PREMIUMS OF CLERK'S BOND:** Paid by Banks: Deposit of Litigant's Money: Right to Recover. Money paid to a surety company by banks as premiums for the execution of the bond of the circuit clerk, who deposited in such banks money paid into court for a litigant in a pending suit, cannot be recovered by said litigant in a suit against the clerk or his bondsmen. Even though it be conceded that the clerk received a benefit from such payment for his bond, yet as the litigant received from the clerk all that was due him at the time his judgment became final, the right to recover for such benefits belonged to the State, if to any one, under the statute (Sec. 4558, R. S. 1909).

Appeal from Jackson Circuit court.—*Hon. Daniel E. Bird,* Judge.

AFFIRMED.

*Johnson & Lucas* for appellants.

(1) Anyone who holds something for the benefit of another, and is charged with some fiduciary duties in relation thereto, is a trustee, and the defendant Shoemaker, as clerk, was a trustee for the beneficiary of the fund. Perry on Trusts (6 Ed.), secs. 454, 470, 471; Bent v. Priest, 86 Mo. 482; Landis v. Saxton, 89 Mo. 382; ' Jones v. Byrne, 149 Fed. 463; McKeigue v. C. & Mo. Railroad, 11 L. R. A. (N. S.) 151. (2) The money was paid to the defendant Shoemaker as clerk, for the use and benefit of relator Ridge, and even though Ridge then declined to accept it, he was entitled to interest thereon, from the clerk, when he finally took it, according to the decision of the Supreme Court, if the clerk, pending litigation, converted it to his own use, by deriving benefits from it. Snyder v. Cowan, 120 Mo. 389; St. L., K. & N. W. Railway v. Clark, 121 Mo. 187; St. L., O. H. & C. Railway v. Fowler, 142 Mo. 687; Bassett v. Kinney, 24 Conn. 267. (3) As the defendant Shoemaker, as clerk, was forbidden by law to get any benefit from the money paid over to him in his official capacity, he is chargeable, in favor of the beneficiary, with the highest legal rate of interest, compounded, because he used the money in such a way as to get a benefit from the use. R. S. 1909, secs. 2685, 4557, 4559; Webb on Usury, sec. 87; Williams, Admr., v. Pettigrew, 62 Mo. 472; Cruce v. Cruce, 81 Mo. 676; In re Murdock, 129 Mo. 499; Smelting Co. v. Reed, 23 Colo. 533. (4) The surety is liable for the action of the clerk in the premises. 2 Brandt on Suretyship and Guaranty (3 Ed.), sec. 633; In re Finks, 41 Fed. 386; Howard v. United States, 102 Fed. 77; Howard v. United States, 184 U. S. 676; Fidelity Co. v. Rankin, 33 Okla. 7. And the surety is also liable for interest on the fund, as the clerk obtained a benefit for himself by allowing the trust company to use it. McPhillips v. McGrath, 117

Ala. 568; Van Sant v. State, 53 Atl. 711. (5) The trust company. was compelled by law to pay interest on this trust fund. R. S. 1909, sec. 1124; State ex rel. v. Lincoln Trust Co., 144 Mo. 562; Denny v. Jefferson Co., 272 Mo. 446. (6) The fact that defendant Shoemaker, as clerk, received the fund from his predecessor in office, and deposited, and kept it deposited, in his own name as clerk, showed that he received it and held it *virtute officii,* and that whatever he did in relation to it was *virtute officii.* Heppe v. Johnson, 73 Cal. 265; Billings v. Teeling, 40 Iowa, 607.

*Elijah Robinson* for respondent J. B. Shoemaker.

(1) The law allows interest only upon the ground of a contract, express or implied, for its payment, or as damages for the detention of money, or for the breach of some contract, or the violation of some duty. 22 Cyc. 1474A; Healy v. Fallon, 69 Conn. 228; Jones v. Mallory, 22 Conn. 386; Selleck v. French, 1 Conn. 32; Black v. Reynolds, 3 Harr. 528; Milton v. Blackshear, 8 Fla. 161; Dodge v. Perkins, 9 Pick. 368; Rensselear G. F. Co. v. Reid, 5 Cow. 587; Schoolbred v. Elliott, 1 Brev. 423; Wolf v. Lacy, 30 Tex. 349; Hope v. Barker, 112 Mo. 342. (2) If defendant had been obligated to pay interest, it would have accrued to Tebeau and not to plaintiff. (3) There being no express contract for the payment of interest, and the principal having been paid and accepted by plaintiff, he cannot now maintain an action for interest. Stone v. Bennett, 8 Mo. 43; Arnold v. Bank, 100 Mo. App. 474; Fake v. Eddy, 15 Wend 76. "Interest follows the principal as the shadow does the substance." Hatcher v. Lewis, 4 Rank. (Va.) 152; McVeigh v. Howard, 87 Va. 599; Jones v. Williams, 2 Call. (Va.) 102; Hollingsworth v. Hammond, 30 Ala. 668; Valentine v. Donoho Banking Co., 133 Cal. 191; Chandler v. Peoples Savings Bank, 61 Cal. 401; Canfield v. New-Milford School Dist., 19 Conn 529; Vider v. Chicago, 60 Ill. App. 595; Rob-

State ex rel. Ridge v. Shoemaker.

bins v. Cheek, 32 Ind. 328; Jamison v. Burlington Ry. Co., 78 Iowa 562; Ward v. Everett, 1 Dana, 429; Jett v. Cockrill, 85 Ky. 348; Amer. Bible Society v. Wells, 68 Me. 572; Robbins Cordage Co. v. Bremer, 48 Me. 481; Milliken v. Southgate, 26 Me. 424; Howe v. Bradley, 19 Me. 31; Talbot v. Bay City, 71 Mich. 118; Somerset Co. v. Veghte, 7 N. J. L. 145; Maloy v. Bernallio County, 10 New Mex. 638; Hamilton v. Van Rennselear, 43 N. Y. 244; Brady v. New York, 43 N. Y. Supp. 452; Roberts v. Brandies, 44 Hun, 468; Maddaugh v. Elmira, 23 Hun, 79; King v. Phillips, 95 N. C. 245; Moore v. Fuller, 47 N. C. 205; Waller v. Kingston Coal Co., 191 Pa. St. 193; Childs v. Millville Ins. Co., 56 Vt. 609; Abbott v. Wilmot, 22 Vt. 437; Ryan Drug Co. v. Hvambsahl, 92 Wis. 62; Stewart v. Barnes, 153 U. S. 456; Graves v. Saline Co., 104 Fed. 61; Southern Railroad Co. v. Dunlop Mills, 76 Fed. 505.

*James E. Goodrich* for respondent Globe Surety Company.

(1) The uncontradicted testimony clearly shows that the deposit by respondent Shoemaker of the funds in the two banks was not pursuant to any agreement or understanding that such banks were to pay premiums on his bonds, and also that such payment was voluntarily made on the initiative of the banks and not made in response to any agreement or understanding with, or even at the suggestion of Shoemaker. Consequently, the action of the court was correct, irrespective of what may be the rule of law in this State applicable to benefits received from official funds. (2) Relator's action is based on two alleged breaches of respondent Shoemaker's bond, and unless the evidence establishes liability on the bond there can be no recovery in this action brought in the name of the State of Missouri, even though there might be a liability if an appropriate action had been brought by relator in his individual capacity. Renfroe v. Colquitt, 74 Ga. 618; State ex rel.

v. Harrison, 99 Mo. App. 64. (3) Relator wholly failed to make any showing that there had been a breach of the conditions of respondent Shoemaker's bond. (4) It would have been a felony for respondent Shoemaker to have handled or loaned the fund in the manner in which relator claims it should have been handled under the allegations in connection with alleged "second breach." Had he made the arrangements proposed, his agreement would have become null and void under express statutory provisions. R. S. 1909, secs. 4557, 4558, 4559. (5) It was not the duty of respondent Shoemaker to invest the fund, or deposit the same at interest. On the contrary, he would have committed a felony had he done so. Snyder v. Cowan, 120 Mo. 396; R. S. 1909, secs. 4557, 4558, 4559. (6) Even if we concede for the sake of argument (which we emphatically deny) that Shoemaker received an illegal benefit from the Trust Company, neither Shoemaker nor his surety are liable on his official bond, since he did not receive it by virtue of his office. Secs. 2675, 4557, 4558, 4559, R. S. 1909; State ex rel. v. Harrison, 99 Mo. App. 57; State ex rel Howard, Admr., v. Rollins, 29 Mo. 267; State ex rel. Chase v. Davis, 88 Mo. 585; State v. McDonough, 9 Mo. App. 63; Renfroe et al. v. Colquitt, 74 Ga. 618; Wilkesbarre v. Rockefeller, 171 Pa. St. 187; Feller v. Gates, 91 Am. St. 512; Wilson v. State, 67 Kan. 44; State ex rel. v. Charles Moeller, 48 Mo. 331; Schuster v. Weissman, 63 Mo. 561.

RAILEY, C.—Respondent James B. Shoemaker was elected Circuit Clerk of Jackson County, Missouri, at the general election in November, 1910, and took charge of that office on January 3, 1911, having, on December 19, 1910, given an official bond, with his co-respondent, the Globe Surety Company, as surety, in the sum of $40,000, conditioned as required by law. This action was brought by relator against said respondents on the above bond, and is based on alleged breaches thereof as follows, to-wit: 1st. That respondent Shoemaker

had the beneficial use of a certain deposit, hereafter mentioned, from January 6, 1911, to December 23, 1914, on which relator was entitled to recover interest by reason of the fact that respondent Shoemaker, by agreeing to deposit, and depositing this fund in the Commerce Trust Company and another financial institution, obtained a benefit in the sum of $560, being the aggregate of the premiums paid to his co-respondent for becoming and remaining a surety on his official bond, and also obtained free exchange and protest fees. Relator likewise claims, on account of said alleged breach, interest on said $560 for the time aforesaid at the rate of six per cent per annum, compounding annually. 2nd. That respondent Shoemaker failed and refused to accumulate interest on this fund "for the benefit of relator under the offered arrangements aforesaid with said First National Bank, but permitted the same to remain in the said Commerce Trust Company for nearly four years without any benefit accruing to said fund, or to any one except himself and the said Trust Company."

The alleged arrangements aforesaid with the First National Bank are set out in paragraph three of the second amended petition, which alleges in substance that this fund had previously been deposited by Oscar Hochland, Shoemaker's predecessor in office, with said First National Bank, and that before this money was turned over to Shoemaker, as successor of said Hochland, the attorney for Tebeau had made arrangements with said First National Bank, by which the latter would pay three per cent per annum on said fund, for the benefit of the fund, if said Shoemaker would permit said arrangement, and that said Shoemaker refused to accede to said arrangements, and deposited the same on an open current checking account to his credit as clerk, in said Commerce Trust Company; that the same remained there for the period aforesaid, and that no interest was accumulated thereon for the benefit of the fund.

The fund referred to in petition is a part of $68,200 deposited by one Tebeau, who was plaintiff in an action brought by him against relator, as defendant, to compel the specific performnce of a contract, for the conveyance of real estate, and the amount above mentioned was the sum which the circuit court of Jackson County, Missouri, by its decree of April 11, 1910, required Tebeau to deposit into the registry of said court, as a condition precedent to Tebeau being decreed the relief of specific performance prayed for in his petition. This deposit was made at the time of the entry of the decree. The cause was entitled "George Tebeau, plaintiff, vs. Thomas S. Ridge and Effie S. Ridge, defendants." The latter appealed the case to the Supreme Court and it is reported in 261 Mo. 547 et seq. The judgment below was affirmed In Banc, but the amount was reduced on account of the contingent dower of the wife of Ridge. Thereafter, and on December 23, 1914, the circuit court of Jackson County, aforesaid, made and entered of record its final decree in accordance with the opinion of the Court in Banc, by requiring respondent Shoemaker to pay this relator the sum of $65,337, and the remainder of said deposit to said plaintiff Tebeau. Ridge made no demand upon the clerk for interest at the time, and never made any demand therefor at any time prior to the time of service of notice of February 16, 1915, upon respondent Shoemaker for interest.

The fund in controversy was deposited by Oscar Hochland, as clerk aforesaid, under an arrangement made by the attorney for Tebeau; with the First National Bank, and made solely for the benefit of Tebeau. That bank agreed to pay Tebeau interest at the rate of two per cent per annum on the amount thereof. Shortly after the election of Mr. Shoemaker, Senator Cooper, acting for Tebeau, approached respondent Shoemaker and requested him to keep the Tebeau money on deposit with said First National Bank, advising him that he had some talk with Mr. Swinney, president of that bank, about paying some interest to Tebeau on the

money.    Thereupon Shoemaker advised him that he expected to do his business with the Commerce Trust Company and the National Bank of the Republic.    He also advised him that he could not place official funds on time certificates of deposit, and that it would be necessary for him to carry the same in a general account.    He further advised Senator Cooper, that he could not receive any interest and that he had no objection to Mr. Cooper making arrangements with the Commerce Trust Company, whereby Tebeau should receive interest.    Senator Cooper had several conversations about the matter, and in one of them respondent Shoemaker advised him that he would have nothing to do with the payment of interest on this money to Tebeau, and that he was carrying the money with the Commerce Trust Company on open account, and that whatever arrangement he wanted to make he would have to make himself; that he had no objection to Senator Cooper's making whatever arrangement he could with that institution.

Senator Cooper testified that, in his conversation with Mr. Swinney, of the First National Bank, and with Mr. Kemper, of the Commerce Trust Company, and with respondent Shoemaker, about the matter, he was undertaking to get interest for Tebeau, and not for Ridge and so stated to all of them.

Respondent Shoemaker assigned as a reason for keeping the money on deposit in the Commerce Trust Company and in the National Bank of the Republic, the fact that the officers of these institutions were his particular friends.    He further testified that there was no understanding that the Commerce Trust Company and the National Bank of the Republic were to pay for his bond, and that the taking care of the same was not pursuant to any previous understanding or arrangement. He further testified that he never received one cent of interest personally from any Kansas City Bank, on any personal or other account.

When Hochland turned over the funds in his hands as clerk, to respondent Shoemaker, the latter received altogether the sum of $161,337.48, and did not receive any of the Tebeau deposit as such, or as he expressed it, "just received so much money." This amount was divided up between the Commerce Trust Company and the National Bank of the Republic. All of the various checks whereby Hochland paid the same were drawn upon the First National Bank, in which Hochland had kept all of his funds. The sum received by Shoemaker from Hochland was in no wise segregated when the same was received by Shoemaker or when deposited with the two banks aforesaid.

Mr. W. T. Kemper, president of the Commerce Trust Company, testified that the premiums on the surety bond, which was given prior to the time that Shoemaker became clerk, were paid by the National Bank of the Republic and the Commerce Trust Company, and these payments were made at his suggestion. He stated further that he had suggested to Mr. Huttig that he thought, inasmuch as Mr. Shoemaker had told him he was going to give the two banks his deposit, it would be a nice thing for them to pay the premium on the bond for him. He testified that the furnishing of the bond by his bank and Mr. Huttig's bank was merely a voluntary matter without any suggestion or requirement on the part of Mr. Shoemaker, and that there was no condition attached to the paying of'the premiums on the bond that the money should be put in the two banks, and that nothing was said upon that subject. Mr. Kemper stated that the Commerce Trust Company paid interest on some checking accounts, but did not pay interest on many of them.

Mr. Huttig testified there was no suggestion or arrangement with Mr. Shoemaker about the deposit made in his bank, and that Mr. Shoemaker simply "brought us over a deposit;" that no interest was paid to Mr. Shoemaker on the deposit and that he received

no benefit in consideration of his keeping the deposit there.

There was some evidence tending to show that exchange was charged Shoemaker by the Commerce Trust Company, but Shoemaker said this was of no benefit to him as he would have taxed same against the parties who sent him checks. Protest fees were charged on Shoemaker's account several times, but he declined to pay the same. The accounts in both of the above banks were kept in Shoemaker's name as clerk of the circuit court.

At the time the money was paid over to relator Ridge, nothing was said about interest. Neither relator, nor any party to said. suit, in which the deposits had been made, ever suggested that the court make an order directing that the money in the hands of the clerk be loaned out. There is no testimony in the case tending to show that respondent Shoemaker ever received any interest from either of said banks on the respective deposits made with them.

At the close of the evidence, the trial court entered judgment in due form in favor of defendants. Relator filed his motion for a new trial in due time, which was overruled, and the cause duly appealed by him to this court.

This case was tried .without a jury and judgment rendered for defendants. The motion for a new trial contains but a single assignment of error, as follows: "That the finding and the judgment are contrary to the law and to the evidence."

I. It is contended by relator, that he is entitled to recover of defendants, interest, from January 6, 1911, to December 23, 1914, on $65,337. The above sum was adjudged to be due from Tebeau to relator herein by the circuit court on last mentioned date, without interest, and said sum was paid to him at that time by defendant Shoemaker.

Interest on Court Deposit.

In the suit for specific performance (261 Mo. 547) brought by Tebeau against Ridge, there was paid into court by Tebeau, under an order of the circuit court, $68,200, while Oscar Hochland was clerk of said court. The last-mentioned amount was reduced by Court in Banc, and the circuit court, under the mandate of this court, found that there was due relator the above sum of $65,337, which was paid to him by Shoemaker, as aforesaid. The evidence is conclusive that Shoemaker did not loan any portion of above fund, nor did he ever receive any interest from any source upon any part of same. It must have been manifest to defendant Ridge and Tebeau when the above case was appealed to the Supreme Court, that some time would elapse before the case could be reached and disposed of here on its merits. If the parties to said action had desired said funds loaned, pending said litigation, they should have applied to the court for an order authorizing the loaning of same. They were bound to know, as a matter of law, that the clerk, without such authority, was not authorized to loan said fund.

Section 4557, Revised Statutes 1909, reads: "No officer appointed or elected by virtue of the Constitution of this State, or any law thereof, . . . shall loan out, with or without interest, any money or other valuable security received by him, . . . by virtue of his office, agency or service, or under color or pretense thereof; and any such officer, agent or servant so loaning such money or valuable security, on conviction thereof, shall be punished by imprisonment in the penitentiary not less than two years or by a fine of not less than five hundred dollars."

As the parties to the original litigation declined to obtain an order from the court for the loaning of such fund, and as the above statute absolutely forbade the clerk to loan the same or to receive interest thereon, upon what principle of law can it be contended that relator is entitled to interest on said fund?

In support of his contention, appellant cites the following authorities: Snyder v. Cowan, 120 Mo. 389; Railway Co. v. Clark, 121 Mo. l. c. 187; Railway Co. v. Fowler, 142 Mo. l. c. 687; Bassett v. Kinney, 24 Conn. 267.

In Snyder v. Cowan, supra, the defendant had in his hands certain funds which had been paid to him as damages due the plaintiff in a condemnation proceeding in the circuit court. The defendant loaned the money in his hands and actually received therefor interest thereon to the amount of $723.50. Plaintiff sought to recover from the clerk the above sum, and was successful in maintaining his action therefor. It will be observed, that in the above case, no mention is made of the criminal statutes relating to the duty of the clerk in respect to such funds held by him as a public officer. In said cause, there was paid into the hands of the clerk for the benefit of the landowner, $14,910. "Thereafter the defendant deposited the money in the bank, and for the use thereof received in the way of interest the amount here in controversy, $723.50, which plaintiff claims was received by defendant on his, plaintiff's, money as and for his use and benefit." On page 395, BURGESS, J., in discussing the question, said: "Then, when the money had been paid into court by it for plaintiff and no exceptions had been filed by the railroad company to the report of the commissioners, the money thus paid in was his, and he had the right to demand and receive it from the clerk at any time he chose. . . . To whom, then, did it belong? Not the railroad company, nor the clerk, but as a matter of course, it belonged to the plaintiff, for whose use and benefit it was paid into court."

On page 396, BURGESS, J., in quoting from Bassett v. Kinney, 24 Conn. 267, used the following language: "The defendant was under no obligation to place the funds deposited with him as clerk of the court upon interest. 'Had he locked them up in his chest, or merely deposited them in the bank for safe keeping, and re-

ceived no compensation for the use of them, he would not have been accountable for interest. But having placed them where they drew interest, that interest must be considered as having the same ownership as the principal which produced the interest.' [Bassett v. Kinney, supra.] As the principal sum was the plaintiff's, it follows that the interest earned by it is his also.''

We do not consider this case any authority for the recovery of interest by plaintiff upon the fund in controversy here. In the case before us, the clerk had on hands at all times sufficient funds to pay the relator the full amount of his demand when called upon to do so. On the day judgment was rendered in favor of relator for the $65,337, the same was paid to him by the defendant Shoemaker. The money deposited by Tebeau was never loaned by Shoemaker at any time, as heretofore stated, nor did he ever receive any interest thereon. If he had received from the banks in which the deposits were made, interest on the funds aforesaid, then the authority above mentioned might be considered as relevant under such circumstances as are detailed in the Snyder-Cowan case.

In Railway Co. v. Clark, 121 Mo. l. c. 187, the same question arose as in the Snyder-Cowan case. MACFARLANE, J., in behalf of the court, on page 187, said: ''It appears from the judgment of the court that the money paid to the clerk for defendants has, by order of the court, been loaned part of the time. Defendant being entitled to the money would be entitled also to what has been earned and added thereto by way of interest, but not to interest on the amount assessed by the jury.''
The principle announced in this decision is in accord with the law as declared in the Snyder-Cowan case, supra.

The case of Railway Co. v. Fowler, 142 Mo. l. c. 687, follows the rule announced in the Snyder-Cowan case, supra, and only allows interest where the fund in controversy has been loaned or deposited by the clerk

and interest actually received by him for the use of same.

We do not find anything in either of the cases relied upon which authorizes the recovery of interest on the fund in controversy here. The defendant Shoemaker, under the law as enunciated by this court, had the right to deposit the moneys received by him from Hochland in the banks aforesaid, in his name as clerk. [State v. Rubey, 77 Mo. l. c. 620-21.] As heretofore suggested, he kept on hand sufficient funds at all times to meet the demand of relator in case the latter should elect to accept the money deposited in his behalf. The relator having taken no steps to have the fund loaned, and the clerk having received no interst thereon, we are not favorably impressed with the claim made, that relator is entitled to recover interest on the funds held by the clerk under such circumstances.

II. It is claimed by appellant that, as the Commerce Trust Company and the National Bank of the Republic, paid to the defendant surety company **Surety Bond.** $560 as premiums for the execution of Shoemaker's official bond, relator is entitled to recover the amount thus paid, on the theory, that the clerk received the benefit by reason of the deposit of said funds with the banking institutions aforesaid.

Having reached the conclusion heretofore that no part of the funds belonging to relator were loaned, and as he received all that was due him promptly on the day of the rendition of the judgment in his behalf, we are at a loss to understand why he should be permitted to recover the above sum when the clerk was forbidden to loan the money belonging to him, and which he had not sought to have loaned during the litigation. If the clerk received the benefit by reason of an alleged improper arrangement made with these banks, as above mentioned, the right to recover, on account of such acts, rests alone with the State.

Section 4558, Revised Statutes 1909, reads as follows: "If any officer, agent or servant mentioned in Section 4557 shall make any contract or agreement with any person or body corporate, by which such officer, agent or servant is to derive any benefit or advantage from the deposit with such person or body corporate of any moneys or valuable securities held by such officer, agent or servant, by virtue of his office, agency or service, or under color or pretense thereof, such contract shall, as to such officer, agent or servant, be utterly null and void, but the person or body corporate making such contract or agreement shall be liable to the State in an action for the recovery of all such benefit or advantage as would, by the tems of such contract or agreement, have accrued to such officer, agent or servant; and payment to the officer, agent or servant shall not protect the person or body corporate against the action brought by the State."

Assuming for the purposes of the case that the $560 paid by the above banks was a benefit, and improperly received by defendant Shoemaker, yet, it was not received as interest on the fund held by him belonging to relator, and under the expressed provisions of Section 4558, Revised Statutes 1909, supra, the State alone was given the right to recover from the banks the amount received by the defendant Shoemaker as a benefit on account of the deposit made by him as clerk of all the funds in his hands. The succeeding section, however, in express terms, provides the remedy against the clerk on account of his action, if wrongful, in receiving a benefit in violation of the law. Section 4559, Revised Statutes 1909, reads as follows: "Any officer, agent or servant mentioned in Section 4557 who shall make any contract or agreement such as is described in the preceding sections, or who shall receive any benefit or advantage for the deposit of money or valuable security held by him as such officer, agent or servant, or over which he may have supervision, care or control by virtue of such office, agency or service, shall, upon convic-

tion thereof, be punished by imprisonment in the penitentiary not less than two years or by fine not less than five hundred dollars.''

This section provides the remedy against the clerk for improperly receiving a benefit on account of funds in his hands loaned to the banks. If he is guilty of a violation of law in receiving a benefit, suffice it to say, that no right of action has been given relator to recover therefor. The latter received every dollar that was due him on the very day the judgment was rendered in his behalf. No money belonging to him had been loaned by the clerk and no interest paid therefor. The clerk was prohibited by the statutes aforesaid from loaning relator's funds, without an order of court authorizing same. We are, therefore, clearly of the opinion, that relator is not entitled to recover any interest on the funds aforesaid, nor has he any legal right to recover the $560 alleged to have been received by defendant Shoemaker as a benefit under the circumstances aforesaid.

III. Other questions are presented and discussed in the briefs of counsel, but in view of what has been said in the preceding propositions, we deem it unnecessary to consider the same. We are of the opinion, that the conclusion reached by the trial court is correct, and that the judgment on the record before us, was for the right parties. It is accordingly affirmed.

Conclusion.

PER CURIAM:—The foregoing opinion in division is adopted by the Court in Banc. All of the judges concur except *Bond, C. J.,* who dissents; *Woodson, J.,* absent.