## LOUIS P. OBER *vs.* JAMES I. BROOKS.

Suffolk.     December 8, 1893. — October 17, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Landlord and Tenant — Contract to Purchase in Lease — Construction of Lease — Encumbrance.*

A contract to purchase inserted in the same instrument with a demise may be independent, or may fall with the estate demised, and the usual rules of construction are to be applied in ascertaining the meaning of the whole instrument.

In a lease of certain premises for a term of twenty years from a day named, the lessors agreed to sell and convey, at any time within five years from that date, " to the said lessee or his assigns, upon his or their request, all their (said lessors) present rights, titles, interests, and estates, and all the rights, titles, interests, and estates they may have or can by all reasonable acts and efforts at law or in equity obtain or acquire at the date or time of the conveyance in and to all the aforesaid leased premises, with all the privileges and appurtenances thereto belonging." The lease also provided that in case any portion of the premises was taken for public uses during the continuance of the lease, and before the lessee should exercise his option to purchase, he should have the election to terminate the lease, or to restore the premises, at an expense to the lessor not exceeding the damages awarded for the taking; that the lessors should not be liable for any loss of rent occasioned by such taking; that the damages awarded for such loss of rent should belong to the lessee ; and that, if the lessee should terminate the lease " in the manner aforesaid, or otherwise," the right or option to purchase the leased premises should " also be terminated and ended." *Held*, that the lessee's right to purchase was not an independent right, and fell with the lease.

A lease of premises for a term of years from a certain day, at an annual rent payable monthly, provided that, in case a full and complete delivery of the premises, free and clear of all encumbrances, except certain leases then in force and the rights of any tenant at will, should not be made by the lessor to the lessee on the day so named, no rent should begin to accrue until such delivery should be made. *Held*, that the lessee, having entered and acted under the lease, was bound to pay rent, and could not be heard to say that there were encumbrances other than those excepted in the lease.

A lease of premises for a term of years from a certain day at an annual rent payable monthly provided that, in case a full and complete delivery of the premises, free and clear of all encumbrances, except certain leases then in force and the rights of any tenant at will, should not be made by the lessor to the lessee on the day so named, no rent should begin to accrue until such delivery should be made. When the lease was delivered the premises were subject to mortgages, which were discharged afterwards with the proceeds of another mortgage executed and delivered on the day of such discharge, and expressly made subject to the lease, under which possession had not then been taken. *Held*, that the later mortgage was not such an encumbrance as was contemplated in the provision of the lease.

BILL IN EQUITY, filed October 12, 1892, to remove a cloud upon the plaintiff's title to certain premises on Avery Street and Haymarket Place in Boston. Hearing before *Morton*, J., who directed a decree to be entered for the plaintiff, and, at the defendant's request, reported the case for the consideration of the full court; such decree to be entered as law and justice might require. The facts appear in the opinion.

The case was argued at the bar in December, 1893, and afterwards was submitted on the briefs to all the judges.

*I. R. Clark*, for the defendant.

*G. Putnam*, for the plaintiff.

BARKER, J. In a demise dated May 31, 1889, but in fact executed and delivered on August 2, 1889, for a term of twenty years from June 10, 1889, the lessors agreed to sell and convey, at any time within five years from June 10, 1889, " to the said lessee or his assigns, upon his or their request, all their (said lessors') present rights, titles, interests, and estates, and all the rights, titles, interests, and estates they may have or can by all reasonable acts and efforts at law or in equity obtain or acquire at the date or time of the conveyance in and to all the aforesaid leased premises, with all the privileges and appurtenances thereto belonging." * The question for decision is whether this right to purchase has been lost, the plaintiff contending that it would cease upon the termination of the estate for years, and that it came to an end on February 11, 1890, when the lessors entered for non-payment of rent, and the defendant contending that it was an independent right which would not fall with his estate for years, and also that his estate for years was not in fact terminated, because no rent had accrued when the lessors entered.

---

* The lease also provided that in case any portion of the premises was taken for public uses during the continuance of the lease, and before the lessee should exercise his option to purchase, he should have the election to terminate the lease, or to restore the premises, at an expense to the lessors not exceeding the damages awarded for the taking; that the lessors should not be liable for any loss of rent occasioned by such taking; that the damages awarded for such loss of rent should belong to the lessee; and that, if the lessee should terminate the lease " in the manner aforesaid, or otherwise," the right or option to purchase the leased premises should " also be terminated and ended."

We are of opinion that the right to purchase was not independent, and that the parties intended that, if the estate demised should end before the expiration of five years, the right to purchase should also end. The authorities cited by the defendant upon this branch of the case are not in point. Shep. Touchst. 170, deals with the increase of an estate by the happening of a condition. See *Chedington's case*, 1 Co. Rep. 153; *Lord Stafford's case*, 8 Co. Rep. 73. In *Green* v. *Low*, 22 Beav. 625, the right to purchase was inserted in an agreement to build, and the parties did not intend that a failure to insure in a specified office should work a forfeiture of all rights under the contract. Neither *Moss* v. *Barton*, L. R. 1 Eq. 474, *Buckland* v. *Papillon*, L. R. 1 Eq. 477, *Edwards* v. *Gale*, 52 Maine, 360, nor *Newman* v. *French*, 45 Hun, 65, supports the doctrine that a lessee can maintain an action on an agreement in his favor contained in a lease which he has broken; and in *Thompson* v. *Guyon*, 5 Sim. 65, a lessee who had broken some of the covenants of his lease was thereby debarred from having specific performance of a covenant for a further term.

A contract to purchase inserted in the same instrument with a demise may be independent, or may fall with the estate demised, and the ususal rules of construction are to be applied in ascertaining the meaning of the whole instrument. The present indenture is a lease with an incidental right to purchase during a portion of the term, and we think it was not in the mind of either party that the right should be exercised except by a tenant. The right to purchase and the estate for years were both to commence on the same day. If they were independent, the defendant might assign the estate for years and retain the right to purchase, or might assign the estate to one person and the right to another. That the parties did not so intend is clear from the language of the clause in which the right is first mentioned, and in which it is agreed that, if the lessee shall terminate the lease, the right to purchase shall also be ended. While the agreement is to sell to the lessee or his assigns, that part of it which deals with the betterments and damages assessed or awarded before the making of a conveyance is upon the theory that the right to purchase will be exercised by a tenant. If the right were independent, the defendant might refuse to enter, and might neglect

to perform every portion of his agreement except to pay the price, and yet have during several years the right to acquire the property. Such a state of things would greatly reduce its value to the lessors. We do not think that such was the bargain, and are of opinion that the justice who reported the case was right in finding that the right to purchase would fall with the lease.

The remaining question is whether the estate for years was terminated by the entry made on February 11, 1890, for non-payment of rent. The indenture, dated May 31, 1889, and delivered on August 2, 1889, demised the property for twenty years from June 10, 1889, and the agreement was to sell at any time within five years from that date. It was not to sell the fee, but only such title as the lessors had or could by reasonable efforts acquire at the time of the conveyance. When the indenture was delivered, the property was subject to mortgages, and was in the occupation of tenants, some of whom held under unexpired written leases, and some of whom were tenants at will. The lessee agreed to extinguish at his own expense all leases or rights of these tenants if possible, he having the right to collect for his own use all rents coming due from them after June 10, 1889. There was no express stipulation that he should take possession, but a covenant to pay a rent of six thousand dollars per annum by equal monthly payments on the tenth day of each month in every year during the term, and the following stipulation was inserted at the end of the indenture, namely : " In case a full and complete delivery of the within leased premises, free and clear of all encumbrances, except the leases in force May 31st, 1888, and the rights of any tenant at will, which are to be assumed and taken care of by the lessee as before provided, shall not be made by the lessors to the lessee on the 10th day of June, 1889, then in that case no rent shall to [*sic*] commence to accrue under this lease until such delivery shall be made. Rents of existing tenants of the leased premises shall be apportioned as of the date of such delivery, and the lessors shall be entitled to that portion thereof representing the period from June 10th, 1889, to the date of the delivery, and the lessee to the remainder."

The lessors were Letitia Blakemore, widow of William Blakemore deceased, and John E. Blakemore, William B. Blakemore,

Ann E. Merrill, and Letitia B. Evans, the four persons last named being children of the deceased William Blakemore, and each of the four being married. These lessors had title as devisees under the will of William Blakemore, his widow having a life estate and the children the remainder. Even if the mortgages should be discharged, the lessors could not convey the property free from the inchoate rights of the wives of John E. Blakemore and William B. Blakemore, and of the husbands of Ann E. Merrill and Letitia B. Evans. These wives and husbands joined in the lease, not as lessors, but in token of their assent, and of their release of all rights during the term, and no longer; and they also severally covenanted that, in case of a purchase upon the specified terms, they would join in the deeds, in token of their release of all rights in the property. But this covenant was to the lessee and his assigns, and not to the lessors.

The mortgages outstanding at the delivery of the indenture were discharged on November 2, 1889, with the proceeds of another mortgage executed and delivered on that date, and expressly made subject to the lease. Thereupon the lessors demanded that the defendant should take possession under the lease. This he orally refused to do, stating that he believed that the encumbrances were not all removed; and also stating in writing that he was ready to take possession whenever the premises should be free of encumbrances except as provided in his lease, and that he was also ready to take immediate possession, with the understanding that he should not thereby waive or affect his right to the removal of all encumbrances except as provided in his lease, including in such removal the mortgage of November 2, 1889. This proposition was not assented to by the lessors, and was repeated by the defendant and again not accepted; and on December 3, 1889, the lessors wrote to the defendant tendering him immediate possession, claiming that the premises were free of all encumbrances except as provided in the lease. On December 6, 1889, the defendant took possession, protesting that the premises were not free of encumbrances, and claiming a right under the lease not to pay rent while encumbrances existed. On January 4, 1890, no rent having been paid to them, the lessors demanded rent under the lease. On January 10, 1890, the defendant tendered some $206 of rent which he had collected,

due from subtenants; the tender was refused; and on January 11, 1890, payment of the rent then due was duly demanded of the defendant, and written notice served upon him that he had failed to perform one of the covenants of the lease. On February 11, 1890, the lessors entered for non-payment of rent, and repossessed themselves of the premises, and the contention of the plaintiff is that this entry terminated the defendant's estate for years, and with it his right to purchase.

In the first place, it is clear that neither the defendant's offer to take immediate possession, with the understanding that he should not thereby affect his right to removal of encumbrances, nor his protest when taking possession that the premises were not free from encumbrances, nor his then claiming a right under the lease not to pay rent while any encumbrances existed, affected his obligation to pay rent. His offers were not accepted, and his protests and claims could not vary the effect of the indenture. Although, if the premises were not free from encumbrance, that fact would have justified him in declining to take possession, the true construction of the indenture is, that, when possession should be delivered to and accepted by him, his obligation to pay the stipulated rent would begin. When he should take possession, the right of the lessors to have any other benefit from the use of the property than the payments of the rent which he was to make would cease, and we cannot think that either party intended that he might enter and have the use of the property, and collect the rents from subtenants, and then contend that, by reason of some encumbrance which might in no way affect his power to obtain revenue from the property, he was not bound to pay rent. When possession was offered him on the footing that there were no encumbrances, he had no right to enter except on the footing that he thereby became liable for rent, and even if he might have stayed out, if he went in, he was bound to pay the rent; and his failure to pay was a breach of covenant, and warranted the lessors in taking steps to end the lease. That instrument did not mean that he might enter and collect rents, and still say that he would pay no rent. It is admitted by his answer, and found in the report, that he took possession and collected rents of the tenants in occupation. The only ground on which he could do this was the authority

given him by the lease. He could not act in this way under the lease, and still be heard to say that he was exonerated from the duty of paying rent. He was in as lessee, and acted under the lease, and was bound as lessee to pay rent. He refused so to do, and the lessors by their entry determined the lease. The later mortgage, made after and expressly subject to the lease, is clearly not such an encumbrance as was contemplated in the stipulation quoted; and in our opinion, if he might have insisted that the conveyance by which the south wall of No. 6 Haymarket Place was made a party wall was such an encumbrance, and might have for that reason refused to enter, which we do not decide, he cannot be heard so to insist after having entered and acted under the lease.

We are therefore of opinion that the decree for the plaintiff should be affirmed.                                *So ordered.*