CHATHAM-TRENARY LAND CO. *v.* SWIGART.

1. SPECIFIC PERFORMANCE—CONTRACTS—EQUITY WILL NOT SUPPLY OMISSION—ADEQUATE REMEDY AT LAW.

Where a contract in which defendants agreed to sell land for plaintiff provided that it should be classified into three classes and sold at designated prices for each grade, but failed to classify according to particular descriptions, plaintiff was not entitled to specific performance if defendants agreed to pay for 3,000 acres each year whether they sold same or not, where it was necessary for the court to designate the lands defendants should have taken in order to assess the damages, but its remedy is an action at law, since equity may only

enforce the contract as made, and is powerless to supply any omission.

2. BROKERS—CONTRACTS—CONSTRUCTION.

A clause in a contract for the sale of land wherein defendants agreed to sell at least 3,000 acres each year, *held*, not to amount to an agreement by defendants to purchase for themselves 3,000 acres of land in case they failed to sell it to others.

Appeal from Alger; Fead (Louis H.), J. Submitted June 13, 1922. (Docket No. 105.) Decided October 2, 1922.

Bill by the Chatham-Trenary Land Company against George W. Swigart and others for the specific performance of a land contract. From a decree dismissing the bill, plaintiff appeals. Modified and affirmed.

*W. S. Hill* and *John J. Walsh*, for plaintiff.

*Howard L. Campbell* (*Mechem, Onen & Mechem*, of counsel), for defendants.

WIEST, J. Plaintiff, as owner of 16,980 acres of land in Alger county, this State, wanted to sell the same and, on December 4, 1920, entered into a contract with defendant George W. Swigart, who contracted in his own behalf, and for the other defendants, regarding the sale thereof. The contract covers 11 pages of the printed record, and is too long to be set out at length in this opinion, and we, therefore, state but the substance thereof. In the contract the lands were classified as high-grade, average-grade, and third-grade, and the price to be received by plaintiff for each grade was designated, leaving defendants for their activities and profits so much of the purchase money as exceeded the designated grade prices. Defendants represented themselves to be equipped to secure buyers for lands through agents, advertisements and other methods of publicity, and agreed to

maintain an office and to expend not less than $1,000 per year in advertising the lands and to have a competent salesman devote his time to the selling thereof. Contracts for the sale of the lands were to be made in the name of defendants who were to report such sales to plaintiff during the month following the making thereof. Plaintiff was to pay the taxes on all unsold lands.

If a purchaser of land on contract desired to exchange for other land defendants had permission to consent thereto upon notifying the plaintiff. Defendants were to pay plaintiff, "as consideration for second party's purchases of lands which second party sells previous to December 31, 1921," $9.50 per acre for high-grade lands, $8.50 per acre for average-grade lands, and $7.50 per acre for third-grade lands, with an increase each year thereafter of 75c per acre.

Settlements were to be made between the parties at the time of cash sales with an allowance to defendants of a discount of two per cent. On June 30, 1921, there was to be a settlement between the parties with respect to lands sold on time and the total amount due the plaintiff was to be ascertained and 20 per cent. thereof paid in cash, and 80 per cent. paid in four equal installments, with interest at the rate of 6 per cent. per annum, payable semi-monthly, to be evidenced by the promissory notes of defendants, and like settlements were to be made semi-annually thereafter. Defendants were to advance plaintiff the sum of $5,000 to be applied upon their purchases of land and to reimburse themselves by deducting this sum from the settlement of December 31, 1921, applying such advancement first against the promissory notes given in the settlement between the parties and then against the cash portion of the settlement. The $5,000 to bear interest at the rate of 7 per cent. per annum until paid. Defendants were granted author-

ity to make final contracts. Upon payment of the full purchase price for any description of land plaintiff was to issue a deed therefor to defendants or to whomsoever defendants designated and to furnish an abstract of title. Upon a purchaser completing his contract with defendants they were to make remittance in cash to plaintiff for any unpaid portion of the designated price. The form of the contract to be given by defendants to purchasers required the approval of the plaintiff. The 10th and 11th paragraphs of the contract were as follows:

"10th. It is considered for the interest of both parties that sales of the lands embraced in the annexed schedule be made as speedily as possible, and to that end the second party agrees that by December 31, 1921, he will have sold at least three thousand (3,000) acres and thereafter, that he will sell at least three thousand (3,000) acres in each year until all shall be disposed of, provided that on the 1st day of January of any year at least three thousand (3,000) acres of salable land are available for second party to sell during that year, and is not prevented from doing so because of lands not being released and not submitted in sufficient acreage to second party, in which case the second party agrees to sell whatever amount of such acreage under three thousand (3,000) acres is available, or on hand and ready for selling on each January 1st of and for the ensuing year thereafter.

"11th. In case, however, there shall be default in respect to the amount of lands sold, or contracted to be sold, before December 31, 1921, and the amount to be sold by second party each year thereafter, as in clause 10 provided, it shall be optional with first party to declare this contract forfeited as provided in clause 12."

The plaintiff filed the bill herein for specific performance by defendants of this contract and claims the defendants defaulted in making sales during the first year to the extent of 2,160 acres, and refused to pay the plaintiff its one-fifth of the price of such lands

in cash and to deliver to plaintiff the notes for the remaining four-fifths at the average price of $8.50 per acre. The reason given by the plaintiff for applying to the court of equity is stated as follows in the brief of counsel:

"Because the lands were classified, each class at a different price to plaintiff, and because the defendants alone can determine from which the lands are to be taken and therefore the defendant alone can determine the price they should pay plaintiff, the plaintiff cannot bring an action at law for the one-fifth cash payment or sell the 2,160 acres upon the open market until equity has required the defendants to make that determination.

"That determination is the first relief prayed for by plaintiff in its bill. Then, because equity having taken jurisdiction of a matter it will proceed and grant further appropriate relief, the plaintiff prays for a money decree for the one-fifth cash payment and specific performance of the agreement to deliver the four notes for the deferred payments."

It is also stated in the brief:

"We wish to emphasize some things we do not claim and do not ask for. We never employed the defendants as our agents. We never gave them a sales agency as such. We entered into a contract with them to dispose of all of our lands then remaining unsold and disbanded our previously existing sales agency.

"We do not ask for a decree requiring the defendants to perform a promise to sell 3,000 acres. We are asking that they pay us in accordance with the terms of the contract for the 3,000 acres which they contracted that they would have sold by December 31, 1921, and incidentally relieve us from the burden of carrying the lands after that date."

The learned circuit judge, upon a motion to dismiss the bill, held there could be no specific performance decreed and granted the motion. Plaintiff presented a proposed decree transferring the case to the law side of the court, but this was refused and the case dismissed. Plaintiff has appealed and insists that the

bill states a case in equity but asks in case we hold otherwise that the suit be transferred to the law side of the court.

Plaintiff claims that defendants obligated themselves to pay for 3,000 acres of land each year, whether they sold the same or not. If plaintiff is correct in this, an action at law affords an adequate remedy. But plaintiff says the particular descriptions to be taken by defendants each year was left to their selection, and, as the parcels varied in price, plaintiff has a right to invoke the aid of the equity court in having the parcels defendants should have taken designated, in order to fix the basis for assessment of damages. If the contract falls short of affording a remedy in such particular, the court of equity is powerless to supply the omission.

In granting specific performance the court cannot go beyond the contract of the parties. The court can do no more than enforce the contract, and if the parties have failed to provide in the contract an essential to its performance, such as making clear the manner of executing its provisions, the court cannot step in and supply the defect. If there has been a breach of the contract by defendants, the remedy of plaintiff is at law for damages. The contract provisions point no way of selecting the parcels of land to be sold each year by defendants, and if they refuse to make selection the court of equity cannot decree their selection in order to make it possible for plaintiff to measure its damages arising out of such breach. To do that would not be specific performance at all but merely a step to aid plaintiff in the assessment of damages for a breach of the contract.

Upon due consideration of the contract we are unable to hold that under its terms the defendants agreed to purchase for themselves 3,000 acres of land each year.

As said by the learned circuit judge:

"To award the specific performance prayed for in the bill, the court would have to amend the contract by adding a promise to purchase, by describing, or providing a manner of identifying, the lands to be purchased each year, and by stating the terms of payment."

We agree with the circuit judge in the holding that the bill states no case in equity.

We think plaintiff should have an order transferring the case to the law side of the court, and the case is remanded for that purpose.

The decree, so modified, is affirmed with costs to defendants.

FELLOWS, C. J., and McDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.