WAITES *v.* MILLER.

1. VENDOR AND PURCHASER—LAND CONTRACTS—FRAUD.

A contract for the sale of land providing that the vendees were to plat, improve at their own expense, and sell, and make payment on the purchase price from time to time as lots were sold, and also providing that if the total fixed price was not paid within a certain time vendor was to receive the balance and also share in future profits on unsold lots, *held*, neither fraudulent nor unconscionable, in view of the fact that, if performed, vendor was sure to receive the price he had set on the land, and that there was no showing that it was worth more than the price fixed either at the time the contract was executed or at the time of hearing.

2. CONTRACTS—INDEFINITENESS—UNCERTAINTY MAY BE REMOVED BY SUBSEQUENT ACTS.

Courts do not favor the destruction of contracts because of indefiniteness where uncertainty has been removed by subsequent acts, conduct, declarations, or agreements of the parties.

3. SPECIFIC PERFORMANCE—CONTRACT MADE CERTAIN BY SUBSEQUENT AGREEMENT MAY BE ENFORCED.

Where vendees contracted to plat, improve, sell, and pay the vendor a fixed price for the land out of the receipts, without fixing the selling price of the lots, but the low, high, and average selling price was subsequently agreed upon, the agreement regarding prices made the contract sufficiently certain to sustain a suit in equity for specific performance under the principle that the right of vendees to develop and sell was absolutely contracted for and the missing details are of a nature which the court may properly fix and settle; vendor's interest in the selling price being only by way of assurance that he would receive the principal sum, and there having been part performance on the part of the vendees.

4. VENDOR AND PURCHASER—CONTRACTS—BREACH.

A contract for the sale of land providing that the vendees were to plat, improve, and sell, and make payment on the purchase price from time to time as lots were sold, which

fixed the price of the land, but failed to fix the selling price of the lots, although by subsequent agreement the low, high, and average selling price was agreed upon, was sufficiently certain to support an action at law for its breach.

5. CONTRACTS—OPTION PART OF VALID CONTRACT CERTAIN THOUGH SEVERABLE.
    An option to purchase land, which was part of a valid contract for platting, improving, and selling same, was certain, and, although severable, was supported by a valid consideration.

Appeal from Wayne; Merriam (DeWitt H.), J. Submitted June 13, 1928. (Docket No. 112, Calendar No. 33,851.) Decided October 1, 1928.

Bill by Daniel J. Waites against William J. Miller and Ralph Jarvis to set aside a land contract. Defendants filed a cross-bill for specific performance. From a decree for plaintiff, defendants appeal. Reversed, and decree entered for defendants.

*Lucking, Hanlon, Lucking & Van Auken,* for plaintiff.

*Percy W. Grose, Howard H. Colby,* and *Bernard P. Costello,* for defendant Miller.

*William Tarsney,* for defendant Jarvis.

FEAD, C. J. On June 18, 1924, plaintiff listed 40 acres of land in Wayne county with defendant Jarvis, a broker, for sale at $20,000 and on 5 per cent. commission. Sale not being made readily, they discussed subdividing the property; Jarvis brought Miller into the transaction, and on July 16th plaintiff executed to Miller a letter memorandum agreement under which Miller was to improve and prepare the property for sale by lots, at his own expense; sales were to be made by Jarvis, and plaintiff

was to be paid $21,000 less maximum deduction of $1,800 for survey, engineering, plat and incidental expenses. The letter contained the clause: "I agree to accept full payment at any time."

Miller and Jarvis prepared a plat which plaintiff signed on October 9th, but whose approval he later prevented, negotiated an agreement with a bank which had a mortgage on the property for release of lots on specific payments, which agreement plaintiff signed on October 16th, agreed with plaintiff on general schedule of prices for lots, and built a sales office on and began to improve the property at expense of some hundreds of dollars. Jarvis also paid taxes on the property and advanced plaintiff some $250 in cash.

On January 12, 1925, a formal contract was made between plaintiff and both Miller and Jarvis, reciting that plaintiff was desirous of selling his property or having it marketed for him and that defendants "are willing to undertake the improving and marketing of said land, for said first party." The contract is too long to be set out *in haec verba* but its essentials are:

1. That plaintiff fixed the price which must be realized for him out of sale of the land at $21,000 if paid within seven years, less $1,800 as agreed cost of survey, plat and other incidental expense and a 5 per cent. commission to Jarvis, making the net to plaintiff of $19,200. Plaintiff was also to receive all interest which should accrue on land contracts for the sale of lots until his principal sum should be paid.

In case defendants should fail to pay plaintiff $19,200 within seven years, with the interest on contracts, he should receive the balance thereafter and also 25 per cent. of net profits to be thereafter realized on sale of lots then unsold.

2. The $19,200 was to be paid plaintiff "out of the principal proceeds of sales of lots or parcels of said land (or, at the option of second parties, out of their own funds);" $1,000 or more in one year, $2,000 or more in two years, $3,240 or more each year thereafter until the principal sum should be paid; "it being the intention that second parties shall have the right to pay the entire $19,200, or any balance thereof at any time."

In case defendants should make payments so that the $19,200 should be fully paid on or before seven years from the date of the contract, with the interest accruing on the outstanding contracts to the date of full payment of the principal, the plaintiff agreed to convey the remaining land to defendants and assign to them his interest in the outstanding contracts.

3. (a) Defendants agreed to prepare plats as soon as practicable and have them approved and filed and plaintiff agreed to sign them, including dedication of streets and alleys.

(b) The parties were then to prepare and agree upon a scale of prices for lots; to stand until changed by mutual agreement. No lot was to be sold for less than 10 per cent. down payment and 1 per cent. per month.

(c) Defendants "at their own expense or out of their share of the proceeds of sales of lots or parcels of said lands," agreed to make the necessary improvements and prepare the property for sale by lots.

(d) Sales and collections were to be made through Jarvis or such other office as the parties might agree upon.

(e) Plaintiff agreed to sign all contracts and deeds necessary to effectuate sale.

(f) Defendants were to retain, out of sales, a commission of 25 per cent. of the purchase price of the parcel sold, 10 per cent. of the purchase price to be retained out of the down payment and 70 per cent.

of each subsequent payment, until the commission was fully paid.

(*g*) Defendants agreed to furnish plaintiff quarterly statements of sales and collections.

(*h*) The agreement was to bind the heirs, representatives and assigns of the parties.

No trouble seems to have occurred until after this instrument was executed. Shortly thereafter, plaintiff visited his brother, on his return consulted an attorney, and on February 17, 1925, served on defendants a written notice that he claimed the contract of January 12th was "void and of no force and effect and that I terminate the same."

Plaintiff began this action May 22, 1925, to set aside the contract. Defendants appeared and pleaded. On January 11, 1926, defendants tendered plaintiff $19,200 in currency, and demanded a deed. Plaintiff refused the tender. Defendants then, by consent, amended their answer and included a cross-bill asking for specific performance. In open court they made a formal offer of $20,000, which was refused by plaintiff. The court found the facts and law in favor of defendants and directed decree for them, but, before decree was prepared, this court handed down the opinion in *Greenough* v. *Willcox*, 238 Mich. 52, which the circuit judge held controlling, and decree for plaintiff was entered.

Plaintiff claimed that the contract was induced by fraud, was unconscionable, and was void for indefiniteness because the selling price of the lots was not fixed in it. We fully agree with the trial court that the claim of fraud was unfounded. Nor, with him, are we able to discover wherein the contract is unconscionable. If performed, the plaintiff was sure to receive the price he himself set upon his property in three written instruments, and there

was no showing that the land was worth more than such price either when any of the instruments was executed or at the time of hearing. If sales should be plenty and prices good, he might readily realize more than the legal rate out of interest collections.

Courts do not favor the destruction of contracts because of indefiniteness, and hold that uncertainty may be removed by subsequent acts, conduct, declarations, or agreements of the parties. 6 R. C. L. p. 645. The testimony is that the parties at bar agreed upon the low, high, and average selling price on the lots and specifically upon the price of foot frontage in two blocks. As plaintiff's interest in the selling price was only by way of assurance that he would receive the principal sum, and there had been part performance on the part of defendants, the agreement regarding prices made the contract sufficiently certain to sustain an action in equity under the principle that the right of defendants to develop and sell was absolutely contracted for and the missing details are of a nature which the court may properly fix and settle. *Slade* v. *City of Lexington,* 141 Ky. 214 (132 S. W. 404, 32 L. R. A. [N. S.] 201); *Kaufmann* v. *Liggett,* 209 Pa. 87 (58 Atl. 129, 67 L. R. A. 353, 103 Am. St. Rep. 988); *Pugh* v. *Gressett,* 136 Miss. 661 (101 South. 691, 38 A. L. R. 678).

In any event, the contract had become sufficiently certain to support an action at law for breach. *Chatham-Trenary Land Co.* v. *Swigart,* 220 Mich. 137.

The option phase of the contract was certain. Being part of a valid contract, though severable, it was supported by a sufficient consideration. The identical situation is novel, but it seems analogous to an option to purchase in a lease, which requires

no separate consideration but is supported by the lease itself and the payment or agreement to pay rent. *Tebeau* v. *Ridge,* 261 Mo. 547 (170 S. W. 871. L. R. A. 1915C, 367); *Gustin* v. *School District,* 94 Mich. 502 (34 Am. St. Rep. 361); 16 R. C. L. p. 802; *Ober* v. *Brooks,* 162 Mass. 102 (38 N. E. 429).

Plaintiff also contends that the case is ruled by *Greenough* v. *Willcox,* 238 Mich. 52. In that case the court held that, though in form an option, the contract was in fact a listing of land for sale by a broker, the option provision was merely an incident to the making of a sale and to facilitate it and the relation created was that of agency. The court then applied the law of agency to the transaction.

The contract at bar was not in fact a mere listing nor the option an incident to making sales. It contemplated the performance of development, as well as sales, services, and the investment of money by defendants over a period of years. It was a legitimate measure of protection to defendants against loss of such money and services, either in case plaintiff should seek to terminate the contract or they fail to make the required payments out of sales.

The testimony disclosed no unfairness, concealment, or overreaching by defendants.

The decree will be set aside, with costs to defendants, and decree of specific performance entered on their cross-bill.

NORTH, FELLOWS, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.