## SALLES v. STAFFORD, DERBES & ROY, INC.

---

(January 19, 1931. Opinion and Decree.)
(February 16, 1931. Rehearing Refused.)
(March 30, 1931. Writ of Certiorari and Review Granted by Supreme Court.)
(July 17, 1931. Opinion and Decree by Supreme Court.)

---

Welton P. Mouton, of New Orleans, attorney for plaintiff, appellee.

Roger Meunier and Chas. I. Denechaud, of New Orleans, attorneys for defendant, appellant.

WESTERFIELD, J. Dr. Paul Salles brings this suit against Stafford, Derbes & Roy, Inc., for the return of $1,681.86, with interest, the amount demanded being the sum paid by him under an agreement of sale referred to as a "bond for deed," which it is claimed "imports no obligation, is without consideration, is unilateral, is based on potestative condition on part of defendant, is lacking in mutuality, and that the object of said alleged contract is uncertain." In the alternative, and in the event that the agreement be held valid, plaintiff alleges that it has been breached in certain detailed particulars.

Defendant admitted the execution of the agreement and the receipt of the amount claimed by plaintiff herein, but denied that the agreement was void, or that it breached the same in any way and insisted that the contract was in all respects valid and legal.

Dr. Salles took a rule for judgment upon the face of the pleadings, alleging that all essential allegations of his petition had been admitted, and, following a hearing, was awarded judgment against the defendant in the sum prayed for. From that judgment this appeal has been taken.

The facts as developed by the allegations and admissions in the pleadings are:

Plaintiff and defendant entered into an agreement whereby the defendant agreed to sell and plaintiff to buy ten lots numbered 17 to 26, inclusive, in square 2, Hanson place, Jefferson parish, La., for $2,000, part of which was paid in cash and the remainder represented by thirty-six promissory notes maturing from time to time, of which $2,000 Dr. Salles paid the amount demanded in this suit.

Stamped across the agreement of sale and forming part of it is the following provision:

"It is understood that Stafford, Derbes & Roy, Inc., may, at their discretion, cause a new map or re-survey to be made of the property herein sold and that such map or survey, if and when made, may show a change of position, and/or location of property herein sold, provided, however, same number of square feet shown in same square or plot shall be retained.

"It is further understood and agreed that Stafford, Derbes & Roy, Inc., may at their discretion, make, apply for and obtain dedication of streets, roadways, highways," etc.

It is this feature of the contract which plaintiff contends invalidates it, because, as has been heretofore observed, it is lacking in mutuality, and, since it involves no obligation on the part of the vendor, it is, therefore, without consideration, unilateral, uncertain, etc.

The point upon which most emphasis was placed in brief and in argument is the alleged uncertainty of the object of the contract, and it is this contention that we shall first consider.

Article 1779 of the Civil Code provides

"Four requisites necessary to the validity of a contract:

"1. Parties legally capable of contracting.

"2. Their consent legally given.

"3. A certain object, which forms the matter of agreement.

"4. A lawful purpose."

Turning now to the provision of the contract under attack, we observe that the vendor has reserved the right, though under no duty in that regard, to deliver, in place of the ten lots mentioned in the contract, other property in the same square or plot with the same number of square feet, there being no other restriction or qualification of this reservation. Counsel for Dr. Salles directs our attention to the fact that under this clause the vendor need only deliver property in the same

square or plot of the same number of square feet and without regard to its shape or the number or size of the lots. In other words, assuming the ten lots specifically mentioned in the contract to be rectangular in shape, any number of other lots could be delivered, spherical, triangular, or star-shaped, as the whim or interest of the vendor might suggest, provided only that they be in the same square and in the aggregate contain the same number of square feet. This, it is said, clearly evidences the uncertainty of the object of the contract.

We were favored with a most interesting oral argument and very able brief by counsel representing the defendant. The provision under consideration was defended upon the ground that its object and motive are not forbidden, and, therefore, permitted by law, and, as to the alleged uncertainty, it is said that what is so termed is simply an optional condition termed by the French writers "condition Facultative." It is not contended that there exists any article of our Code recognizing or adopting the facultative condition from the French Law, but we are referred to article 2062 et seq., particularly article 2066, which provides:

"But where the things, which form the object of the contract, are separated by a disjunctive, then the obligation is alternative. A promise to deliver a certain thing, or to pay a specified sum of money, is an example of this kind of obligation."

It is admitted that the optional provision in the contract is not an alternative condition, but it is said it is analogous thereto, and that the discharge of an alternative obligation is effected under the same rules and conditions which govern facultative conditions in France.

Article 2070 of the Civil Code, in speaking of the alternative condition, reduces the obligation to a pure and simple one when one of the two things promised could not be the subject of that condition:

"The obligation is pure and simple, although contracted in an alternative manner, if one of the two things promised could not be the object of the obligation."

The distinction between the two conditions is thus stated in Baudry-Lacantinerie et Barde, vol. 13, section 1048, page 203, and section 1050:

"Section 1048: We must again carefully distinguish between the alternative obligation and the facultative obligation. This one comprehends but one prestation, but with the faculty in the debtor of liberating himself by accomplishing another prestation. Thus a testator says: 'I bequeath to Paul ten hectares of ground to be taken from my domain at N. * * *; however I give to my heir the faculty of discharging himself towards my legatee by paying him instead a sum of 10,000 fr.' The heir is held to but one prestation, but one thing is due by him and the legatee can demand only that, the ten hectares of land; but the heir has the faculty of discharging himself by paying another thing, the sum of 10,000 fr."

"Section 1050: We see the difference which exists between the alternative obligation and facultative obligation. In the alternative obligation there are two things equally due, under an alternative, it is true duo sunt in obligatione. In the facultative obligation, on the contrary, but one thing is due, una est in obligatione; the other may be paid in its place, but it is not due, it is only in Facultate solutionis; from which the name facultative obligation, which Delvincourt was the first to give to this obligation and which has remained." (Counsel's translation.)

If, says counsel, the facultative condition of the contract is void under our law for any reason, the situation is the same as that which obtains in an alternative obligation when one of the two things promised cannot be delivered, or cannot properly

be the subject of the obligation when the contract is not void, but is reduced to a simple obligation for the other object.

"The obligation is pure and simple, although contracted in an alternative manner, if one of the two things promised could not be the object of the obligation." Civ. Code, art. 2070.

"The alternative obligation becomes pure and simple if one of the things promised be destroyed, even through the fault of the debtor, or can no longer be delivered." Civ. Code, art. 2071.

Counsel quotes from Dalloz to the same effect. Considering article 1192 of the Code Napoleon (article 2070 of our Code), that author says:

1. "The obligation is not alternative, but pure and simple, if one of the two things promised could not be the subject of an obligation. The obligation becomes again pure and simple, if the obligation contracted in regards to one of the things promised is not valid for all (any) reason other than those indicated in article 1192. In this sense. Larombiere, t. 3, art. 1192, No. 1; Demolombe, t. 26, No. 9; Demante et Colmet de Santerre, 2nd E. t. 5, No. 119 bis; Aübry et Rau, 4th E. t. 4, sec. 300, text and note 10, p. 45; Laurent t. 17, No. 218; Huc. t. 7, No. 292."

3. "The word 'thing' is taken in this instance in its most comprehensive sense; that of prestation would have been more correct. It may relate, in effect, not only to a corporeal thing, movable or immovable, which the debtor promises to give, but also of the doing of an act or of abstaining of doing something. Demolombe, t. 26, No. 4; Baudry-Lacantinerie et Barde, t. 2, No. 1104."

5. "Article 1192 applies again * * * when one of the two things promised is not a matter of commerce. Demolombe, t. 26, No. 10; Demante et Colmet de Santerre, 2nd E. t. 5, No. 119, bis; Baudry-Lacantinerie et Barde, above cited."

6. "Or when one of the two objects is illegal (illicite), against public policy or good morals. * * * Demolombe, t. 26, No. 11, Demante et Colmet de Santerre,

2nd, Ed. t. 5, No. 119 bis; Huc. t. 7, No. 292; Baudry-Lacantinerie et Barden t. 2, No. 1045." (Counsel's translation.)

The conclusion which counsel reaches is that, though we have not recognized the facultative condition in Louisiana, yet our codal provisions relative to the alternative condition are appropriate in principle and their application here results in the reducing of the contract sued on to a pure and simple obligation, assuming the optional part of the contract to be impossible, or improper of performance. In other words, since the faculty of substitution reserved by the vendor cannot be exercised, the original object of the contract must nevertheless be carried out, since it is unaffected by any of the objectionable features of the other clause.

This is a most ingenious argument and does credit to counsel's legal acumen, but we cannot escape the conviction that this contract is unenforceable because of the uncertainty of its object. As to the facultative condition and its analogy to the alternative, we know of no Louisiana authority upon which we might rely for guidance in this interesting but novel field of discussion.

The contract in this case was an agreement to sell, which as is well known, amounts to a sale in so far as to give "to either party a right to claim, recta via, the delivery of the thing." Girault v. Feucht, 117 La. 276, 41 So. 572, 575.

The most superficial consideration is sufficient to demonstrate the impossibility of obtaining specific performance of the contract. Pretermitting for a moment any consideration of the wide latitude which the vendor is given for substitution of other property, if a demand should be made for the delivery of the ten lots mentioned in the contract, the vendor could ob-

ject upon the ground that it had not yet made up its mind on the question of substitution, and that, since there was no limit of time mentioned in the contract, it could not be compelled to say what property would be offered, or when, and of what shape.

We are of the opinion that this clause is such as to strike the entire contract with nullity upon the ground that the object of the sale is uncertain in defiance of the provisions of the Civil Code on the subject, and, that being the case, there is no necessity to consider the other points raised.

For the reasons assigned the judgment appealed from is affirmed.

JANVIER, J. (dissenting).

"All things not forbidden by law, may legally become the subject of or the motive for contracts. * * *" Civ. Code, art. 1764.

"Nous avons a examiner ici quelles choses peuvent etre l'objet due contrat de vente, —A cet egard, comme lorsqu'il s'agit de la capacite des personnes, la regle generale c'est le droite, c'est la faculte; la prohibition n'est que l'esception. Ainsi toutes les choses dont la possession, dont l'usages peut procurer a l'homme quelque avantage ou quelque agreement, peuvent etre vendues, hors celles que la loi a exceptees." Dalloz, Repertoire De Legislation, volume 43, Vente, page 147, section 4, Article 471.

From the above it appears that it is the policy of the civil law that contracts voluntarily entered into by persons sui juris shall not be lightly set aside, and that the annulment of an agreement because of some prohibited condition is rather the exception than the rule; that courts should not interfere except where no other course is open to them.

I am unable to see that the contract here under attack is uncertain in subject-matter in the sense contemplated by the provisions of the Code to which my associates refer.

The subject of the contract is ten lots of ground in Hanson place containing a specified number of square feet. The fact that the vendors were given the right to change the location of the ten lots did not make the subject-matter uncertain. It still remained ten lots of ground containing a specified number of square feet and located in that subdivision. If the contract had provided that the vendors might, at their option, refuse to deliver the property at all, then the condition would have been potestative because the carrying out of the contract would have depended upon the will of the obligors, but here there was no such option. The contract can be complied with in only one way; by delivering ten lots of ground containing a specified number of square feet. Even if the contract be interpreted as giving to the vendors the right, at their whim, to select and deliver any other ten lots in the subdivision, I see nothing prohibited in that.

I may agree with you that for $10 I will sell you my red dog, or that, if I see fit, I may substitute any one of my white dogs to be selected by me. Can that contract be set aside for uncertainty in the subject-matter? Most assuredly not.

If ten persons authorize one of the ten to purchase 100 acres in some desirable neighborhood and to divide the 100 acres into ten tracts of 10 acres each, under an agreement that they will draw lots for the respective tracts, why may not such a contract be entered into? I see nothing illegal or prohibited in that. Each has agreed that he will put up his share of the necessary money to purchase the tract, and just because it is not certain in advance that A will get any particular 10 acres,

or that B will get any particular other 10 acres, I cannot see why the contract should not be enforced and the person authorized to purchase the property could most assuredly enforce collection from A, B, C, and the others of the amount agreed to be paid. What is the difference between that situation and the one presented here? Stafford, Derbes & Roy were the owners of a certain tract of land. Dr. Salles agreed to buy a certain ten lots and he authorized Stafford, Derbes & Roy to substitute ten other lots to be selected by them. I cannot see anything wrong with that.

To state the whole case as I see it, the defendants, Stafford, Derbes & Roy, agreed in writing to sell to the plaintiff, Dr. Salles, the following described property: "Ten lots of ground, numbered 17 to 26, inclusive, in Square No. 2, Hanson Place, Jefferson Parish." The price was $2,000, of which the plaintiff, Salles, paid cash $304, and for the balance he furnished three notes of $432 each, and one for $400, all payable in monthly installments of $36.

On the complete payment of all of said notes, the vendors, Stafford, Derbes & Roy, were to deliver to the purchaser, Salles, a complete notarial act of sale to said ten lots.

Stamped across the face of this agreement of sale were the following words:

"It is understood that Stafford, Derbes & Roy, Inc. may, at their discretion, cause a new map or re-survey to be made of the property herein sold and that such map or survey, if and when made, may show a change of position and/or location of property herein sold, provided, however, same number of square feet shown in same square or plot shall be retained.

"It is further understood and agreed that Stafford, Derbes & Roy, Inc. may at their discretion, make, apply for and obtain dedication of streets, roadways, highways," etc.

In pursuance of this agreement, the plaintiff, Salles, paid on account the sum of $1,681.86. It is this sum which he now seeks to recover. There was judgment for plaintiff, and defendant has appealed.

As the district court passed upon only one ground of nullity, and as that is the only one discussed in the majority opinion, I shall confine myself to a consideration of that issue which is that the agreement of sale was and is a nullity for "uncertainty in the thing sold."

I fail to perceive any force in this objection. The lots the defendants agreed to sell, and the plaintiff promised to buy, are specifically designated and described as "lots 17 to 26 inclusive, in Square 2, Hanson Place, Jefferson Parish." These lots might have been more completely described for identification, but their location and dimension could have been ascertained by reference to the plat of Hanson place, since "that is certain which can be made certain."

It is true that the rubber stamp across the agreement of sale gave the right to the vendors to "cause a new map or re-survey to be made of the property herein sold and that such map or survey, if and when made, may show a change of position and of location of property herein sold, provided, however, same number of square feet shown in same square or plot shall be retained." But that was neither a facultative nor a potestative condition relative to the performance of the agreement, but was only a condition as to the execution of it. For it was stipulated in said agreement that on the final payment of the notes or of the price, Stafford, Derbes & Roy were to deliver to Salles a formal notarial deed to the ten lots designated in the agreement. There was no

uncertainty or ambiguity in this agreement. Stafford, Derbes & Roy could not refuse to execute this promise unless they alleged and proved that they had "caused a new map or re-survey to be made of the property herein sold" and also, if made, that it "showed a change of position and of location of the property herein sold," and, again, that "the same number of square feet shown in same square or plot shall be retained." It · is evident, therefore, that the only effect of that ·ubber stamp was to authorize the defendants to perform their contract' even if the new survey changed the position or location of the ten lots 17 to 27. This rubber stamp created no uncertainty in the agreement, on the contrary, confirmed its certainty and binding effect by authorizing the defendants to execute it by tendering ten lots differently located.

The cases quoted by the plaintiff of Chatham-Trenary Land Co. v. Swigart, 220 Mich. 137, 189 N. W. 1000 and Barnes v. Cowan, 147 Ga. 478, 94 S. E. 564, have no application, for the reason that in neither one of these cases was the property intended to be sold, identified, or susceptible of location.

I see no force in the argument that the vendors might substitute star-shaped or circular lots. Courts may always prohibit absurd interpretations of contracts. Lots of ground must have reasonable shapes and the expression "ten lots of ground" means ten lots of reasonable shape. This contract was entered into by persons sui juris and with their eyes open. If the real estate in that locality had enhanced in value, I doubt not that we would not now be vexing our minds with this controversy.

I respectfully dissent.